GENNA v JACKSON

Docket No. 285746. Submitted November 9, 2009, at Detroit. Decided December 15, 2009, at 9:00 a.m.

Mario and Kimberly Genna, and Mario Genna, as next friend of Layla and Sebastian Genna, minors, brought an action in the Oakland Circuit Court against Beverley Jackson and others, seeking damages resulting from the infestation of their condominium with mold following the rupture of a water heater in the adjoining condominium owned by Jackson (hereafter defendant) while defendant was on vacation. The court, Rudy J. Nichols, J., entered a judgment in favor of plaintiffs consistent with the jury's verdict and denied defendant's motions for a directed verdict and judgment notwithstanding the verdict (JNOV). Defendant appealed.

The Court of Appeals *held*:

1. The evidence established that there were extremely high levels of mold and that mold can cause the types of symptoms suffered by Layla and Sebastian. Defendant did not submit scientific evidence that the mold in her condominium could not have caused plaintiffs' injuries. Expert testimony was not required under the circumstances in order for the jury to conclude that defendant more likely than not is responsible for plaintiffs' injuries. There was ample circumstantial evidence that would facilitate reasonable inferences of causation, not mere speculation. The trial court did not err by refusing to grant defendant's motions for a directed verdict and JNOV.

2. Defendant initiated much of the testimony regarding defendant's offer to pay for mold remediation and, therefore, there is no merit to defendant's claim that Mario Genna was erroneously allowed to testify regarding the settlement negotiations.

3. A proper foundation was laid to allow Mario Genna to refresh his memory while testifying by referring to a typewritten list of the damaged contents of his condominium and their value. Plaintiff showed that Mario's present memory was inadequate, that the list could refresh his present memory, and that reference to the list did refresh his present memory.

4. The trial court properly allowed Mario Genna to testify regarding the value of the contents of his condominium. Expert testimony was not required to establish the value of those commonplace items.

Affirmed.

1. NEGLIGENCE — EVIDENCE — PROOF OF CAUSATION.

A plaintiff alleging simple negligence must demonstrate that the defendant owed the plaintiff a duty of care, the defendant breached that duty, the plaintiff was injured, and the defendant's breach caused the plaintiff's injuries; proving causation requires proof of both cause in fact and proximate cause; cause in fact requires that the harmful result would not have come about but for the defendant's negligent conduct and may be established by circumstantial evidence, but such proof must facilitate reasonable inferences of causation, not mere speculation; the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.

2. EVIDENCE — WITNESSES — REFRESHING RECOLLECTION.

A witness may be allowed to refresh his or her recollection with a writing if the proponent has shown that the witness's present memory is inadequate, the writing could refresh the witness's present memory, and reference to the writing actually does refresh the witness's present memory.

*Siciliano Mychalowych VanDusen and Feul, PLC* (by *Timothy R. Van Dusen* and *Lindsay Kennedy James*), for Mario and Kimberly Genna.

*Blake, Kirchner, Symonds, Larson, Kennedy & Smith, P.C.* (by *Kevin T. Kennedy, Rebecca S. Austin, Andrew F. Smith*, and *Christopher W. Bowman*), for Beverley Jackson.

Before: STEPHENS, P.J. and CAVANAGH and OWENS, JJ.

OWENS, J. In this case involving mold, defendant Beverley Jackson, hereafter defendant, appeals as of right the trial court's denial of defendant's postjudg-

ment motions for judgment notwithstanding the verdict (JNOV) and for a new trial. We affirm.

## I. FACTS

Plaintiffs Mario and Kimberly Genna, and their two young children, Layla and Sebastian, lived at the Maplewoode Condominium complex in Royal Oak, Michigan. Defendant lived next door. Plaintiffs' and defendant's units shared a foundation, walls, an attic, and a plumbing stack.

In December 2004, defendant left her condominium to go visit her brother in Florida and did not return until May 22, 2005. While she was gone, defendant's hot water heater ruptured. When defendant returned home, her condominium was infested with mold. There were patches of mold of all different colors all over the walls and ceilings in her kitchen, family room, and dining area. The hot water tank was spewing water a few feet from the shared foundation wall and there were several inches of standing water on the floor and surface mold throughout the entire basement.

Beginning in February 2005, Layla and Sebastian began to experience flu-like symptoms including diarrhea, vomiting, congestion, and nosebleeds. Over the next few months, their health conditions worsened. They frequently had to be taken to the doctor and the emergency room. Antibiotics and breathing treatments, among others, did not improve their conditions. By May, Layla's fingernails and lips were turning blue and she was gasping for air. Sebastian's health was also worse and he continued to have a cough, a fever, and low oxygen levels. Neither child responded to aggressive treatment. Finally, on May 18, 2005, only a few days before defendant returned and discovered the mold, Kimberly and the children moved out of the condo-

minium and into Kimberly's parent's house. Following their removal from the condominium, Sebastian and Layla's health began to slowly improve.

Mold experts concluded that the interior of defendant's condominium was so grossly contaminated that the inside needed to be demolished. Plaintiffs' microbial expert at trial concluded that two of the molds identified in both plaintiffs' and defendant's condominiums were penicillium and aspergillus, which are molds that are known to produce toxins that can affect human health and pose safety issues. He further concluded that the levels of these two molds were unusually high, to the extent that both plaintiffs' and defendant's condominiums would not be healthy environments in which to live.

Plaintiffs filed a complaint against defendant and others. Following a jury trial, plaintiffs were awarded $303,260 in damages against defendant. After the entry of the judgment, defendant filed motions for JNOV and for a new trial, arguing that plaintiffs failed to present any expert testimony regarding mold being the cause of their personal injuries. The trial court denied defendant's motions. Defendant now appeals as of right.

## II. MOTIONS FOR A DIRECTED VERDICT AND JNOV

Defendant asserts that the trial court erred by denying defendant's motions for a directed verdict and for JNOV. We disagree.

We review de novo a trial court's decision on a motion for a directed verdict. *Roberts v Saffell*, 280 Mich App 397, 401; 760 NW2d 715 (2008). We must view the evidence in the light most favorable to the nonmoving party. *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 201-202; 755 NW2d 686 (2008). "A directed

verdict is appropriate only when no factual question exists upon which reasonable minds could differ." *Roberts*, 280 Mich App at 401.

The trial court's decision on a motion for JNOV is reviewed de novo. *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 131; 666 NW2d 186 (2003). When reviewing the denial of a motion for JNOV, the appellate court views the evidence and all legitimate inferences therefrom in the light most favorable to the nonmoving party to determine if a party was entitled to judgment as a matter of law. *Id.* The motion should be granted only when there is insufficient evidence presented to create a triable issue for the jury. *Amerisure Ins Co v Auto-Owners Ins Co*, 262 Mich App 10, 18-19; 684 NW2d 391 (2004). When reasonable jurors could honestly reach different conclusions regarding the evidence, the jury verdict must stand. *Zantel Marketing Agency v Whitesell Corp*, 265 Mich App 559, 568; 696 NW2d 735 (2005).

Plaintiffs claim that defendant's negligence caused their illnesses and mental and emotional anguish. Accordingly, as in any case alleging simple negligence under Michigan law, plaintiffs must demonstrate: "(1) that defendant owed them a duty of care, (2) that defendant breached that duty, (3) that plaintiffs were injured, and (4) that defendant's breach caused plaintiffs' injuries." *Henry v Dow Chem Co*, 473 Mich 63, 71-72; 701 NW2d 684 (2005).

Proving causation requires proof of both cause in fact and proximate cause. *Case v Consumers Power Co*, 463 Mich 1, 6 n 6; 615 NW2d 17 (2000). "Cause in fact requires that the harmful result would not have come about but for the defendant's negligent conduct." *Haliw v Sterling Hts*, 464 Mich 297, 310; 627 NW2d 581 (2001). Cause in fact may be established by circumstan-

tial evidence, but such proof "must facilitate reasonable inferences of causation, not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). A plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. *Id.* at 164-165. A mere possibility of such causation is not sufficient; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict in favor of the defendant. *Id.* at 165. Normally, the existence of cause in fact is a question for the jury to decide, but if there is no issue of material fact, the question may be decided by the court. *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003).

Defendant urges this Court to adopt the requirement that, in order to prove causation in a toxic tort case, a plaintiff must show both that the alleged toxin is capable of causing injuries like those suffered by the plaintiff in human beings subjected to the same exposure as the plaintiff, and that the toxin was the cause of the plaintiff's injury. They urge this Court to find that direct expert testimony is required to establish the causal link, not inferences. We decline to adopt this requirement. There is no published Michigan caselaw on this subject.

In her brief, defendant urged this Court to follow the United States District Court for the Western District of Michigan's decision in *Gass v Marriott Hotel Services, Inc*, 501 F Supp 2d 1011 (WD Mich, 2007). However, since defendant submitted her brief, that decision was overturned by *Gass v Marriott Hotel Services, Inc*, 558 F3d 419 (CA 6, 2009). The district court opinion concluded that under Michigan law, the plaintiffs were required to

introduce an essential element of admissible expert testimony in order to prove causation. *Gass*, 501 F Supp 2d at 1026. The United States Court of Appeals for the Sixth Circuit rejected that conclusion, and stated:

> Defendants argue that this Court's decision in *Kalamazoo River Study Group v. Rockwell International Corp*, 171 F.3d 1065 (6th Cir. 1999), requires Plaintiffs to introduce an "essential element" of "admissible expert testimony" in order to prove causation. That case, however, cannot be read so broadly. *Kalamazoo River* was an environmental contamination case, involving 38 miles of shoreline which was polluted by the chemical polychorinated biphenyl ("PCB"). *Id.* at 1066. . . .
>
> In holding that the defendant could not be held liable for the PCB contamination along the shoreline, the court noted that the plaintiff presented no reliable expert testimony which refuted evidence showing that PCB from the 1989 leak never reached the nearby waterway. *Id.* at 1072-73. Accordingly, the court held that, "[t]he analytical gap between the evidence presented [by the plaintiff] and the inferences to be drawn . . . is too wide. Under such circumstances, a jury should not be asked to speculate on the issue of causation." *Id.* at 1073 (quoting *Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1360-61 (6th Cir. 1992)).
>
> Contrary to Defendants' assertions, the principle governing *Kalamazoo River* is not applicable to Plaintiffs' claims. . . . In other words, while the *Kalamazoo River* defendant proved an absence of causation by introducing objectively verifiable scientific evidence, Defendants have not done so. Though it is certainly reasonable, as this Court held in *Kalamazoo River*, 171 F.3d at 1072-73, to require a party to refute scientific evidence with scientific evidence, Plaintiffs are not required to produce expert testimony on causation . . . .

> \* \* \*

> We conclude that when a plaintiff claims that a defendant was negligent in filling a hotel room with a cloud of a

poisonous substance, and there is evidentiary support for such claims, expert testimony is not required to show negligence, and the district court erred in holding otherwise. [*Gass*, 558 F3d at 432-434.]

Here, like in *Gass*, defendant has not submitted any scientific evidence that the mold in her condominium *could not* have cause plaintiffs' injuries. Defendant speculates that the children's illness was caused by a virus, because at one point the children's doctor treated them for a virus. However, she offers no scientific evidence that a virus did indeed cause the children's illness.

The evidence submitted by plaintiffs is that both Sebastian and Layla were healthy children before winter 2005. At the same time as the flood and subsequent mold growth in defendant's condominium, both children began experiencing a dramatic decline in health. They suffered from coughing, wheezing, vomiting, lack of oxygen, nosebleeds, and diarrhea. Their medical problems required numerous trips to the hospital emergency room and to their doctor's office. Mario, Kimberly, the children's pediatrician, and the children's grandmother confirmed this sequence of events. Witnesses also confirmed Kimberly's intense distress stemming from her children's illness.

Kimberly also testified that at the same time her children were experiencing these severe health problems, she began to notice a foul odor, "like a dirty diaper," within her condominium. The children were treated for a viral infection, but did not respond to the treatment. They were also treated with strong antibiotics that also failed to relieve their symptoms. While no doctor was able to testify specifically that the children were ill because of their exposure to toxic mold, all the microbial evidence showed massively high levels of

surface and airborne mold toxins in both plaintiffs' and defendant's condominiums. Defendant's expert, Connie Morbach, confirmed the deleterious health effects of mold. Dr. Mark Banner, plaintiffs' expert, testified that the molds in the units were toxic and are known to be toxic to humans and that they can cause toxic reactions in people. Additionally, the children's allergy doctor concluded, in his records, that mold exposure was a possible contributing factor to Sebastian's symptoms. He also stated that "a probable confounding factor is exposure to mold at home after extensive water damage." He further found the timing of the children's illness significant because the children had been otherwise healthy before their mold exposure and their symptoms resolved after they moved from their home.

This is not a complicated case: the children were sick, the children were removed from the home, the mold was discovered, and the children recovered. Testimony established extremely high levels of mold and that mold can cause the types of symptoms suffered by the children. "It does not take an expert to conclude that, under these circumstances, [defendant] more likely than not [is] responsible for [p]laintiffs' injuries." *Gass*, 558 F 3d at 433. Here, there was ample circumstantial evidence that would "facilitate reasonable inferences of causation, not mere speculation." *Skinner*, 445 Mich at 164.

The trial court did not err by refusing to grant defendant's motions for JNOV and for a directed verdict.

### III. MARIO GENNA'S TESTIMONY

Defendant argues that the trial court erred by allowing testimony from Mario Genna about defendant's offer to pay for mold remediation and by allowing Mario

Genna to refresh his memory from the typewritten list of contents of his condominium.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007).

Defendant argues that the trial court erred by allowing plaintiff Mario Genna to testify about any settlement negotiations. Defendant claims that all testimony about settlement negotiations should have been precluded, yet defendant's attorney repeatedly questioned witnesses about this very topic. "[E]rror requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence . . . ." *Farm Credit Services of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 684; 591 NW2d 438 (1998). Because defendant initiated much of the testimony on this subject, this issue is without merit.

Defendant also asserts that the trial court erred by allowing Mario Genna to testify regarding the contents of the condominium from a typewritten list of personal effects totaling $75,000. This typewritten list was based on a similar handwritten list that had already been excluded from evidence by an earlier ruling of the trial court.[1] Mario Genna was asked about his expenses and attempted to use the typewritten list to refresh his recollection of the damaged items that had been in his condominium at the time of the mold exposure and their value. Defendant's attorney objected. The trial

---

[1] Following a hearing, on July 26, 2007, the trial court granted defendant's motion in limine and ordered, "The handwritten content damage list of Genna is precluded from use at the time of trial."

court ultimately rejected defendant's argument that the list was excluded from evidence by the motion in limine.

It is true that the document used by Mario to refresh his memory was not the exact same "handwritten" list that was excluded by the order stemming from the motion in limine. However, it was a typewritten list identical to the one excluded. Nonetheless, this list was never placed into evidence; it was merely used to refresh Mario's memory. A witness may refresh his or her recollection with a writing if there is a proper foundation. To lay a proper foundation, the proponent must show that (1) the witness's present memory is inadequate, (2) the writing could refresh the witness's present memory, and (3) reference to the writing actually does refresh the witness's present memory. *Moncrief v Detroit*, 398 Mich 181, 190; 247 NW2d 783 (1976). Here, plaintiffs satisfied these requirements.

Accordingly, it was not improper for the trial court to have allowed Mario Genna to refresh his memory from the document in question.

### IV. ECONOMIC DAMAGES

Defendant argues that Mario Genna's testimony that he lost contents of the condominium worth almost $75,000 was not competent, was based on hearsay, and was immediately objected to by defendant. We disagree.

When plaintiffs' attorney asked Mario Genna about the value of the contents of his condominium, defendant's attorney immediately objected on the grounds that Mario Genna did not have the expertise to testify in that area. He never made an objection based on hearsay. Where an objection below is taken on different grounds from those raised on appeal, the issue is not preserved for review. *Marietta v Cliffs Ridge, Inc*, 385 Mich 364, 374; 189 NW2d 208 (1971).

In regard to Mario Genna's expertise about the value of the contents of his home, we conclude that the trial court correctly allowed this testimony. Defendant asserts that Mario Genna could not have known which items were salvageable and which items were not because he is not a mold specialist. However, there was testimony from one of the mold experts that any porous items should be thrown out. In addition, defendant's son testified that *most* of the contents of his mother's condominium were "loaded up in a dumpster and taken to a landfill" because they had been exposed to mold. Furthermore, there were photographs of the interior of the Genna condominium that showed the contents of their home. Mario Genna would have been aware of the value of those items, because they were his belongings and he knew how much he had paid for them.

Jurors are expected to apply their " 'common experience' " in assessing facts. *Grimes v Dep't of Transportation*, 475 Mich 72, 85 n 41; 715 NW2d 275 (2006). Using their common experience, the jurors likely concluded that Mario Genna's testimony about the value of the contents of his home was accurate given the corroborating evidence, the commonplace items plaintiffs were replacing (soap, pillows, sheets, furniture, groceries, etc.), and the lack of any evidence contrary to his testimony. When the claimed negligence involves " 'a matter of common knowledge and observation,' " no expert testimony is required. *Daniel v McNamara*, 10 Mich App 299, 308; 159 NW2d 339 (1968) (citation omitted). In short, the trial court properly allowed the testimony of Mario Genna about the value of the contents of his home.

Affirmed. Plaintiffs, being the prevailing party, may tax costs pursuant to MCR 7.219.