# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD BREHMER,

      Plaintiff-Appellee,

v

STATE FARM MUTUAL INSURANCE
COMPANY and NICOLE ALISE ROTHMAN,

      Defendants,

and

AUTO OWNERS INSURANCE COMPANY,

      Defendant-Appellant.

UNPUBLISHED
March 17, 2015

No. 318839
Lenawee Circuit Court
LC No. 11-004097-NF

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

In this third-party auto accident case, defendant Auto Owners Insurance Company (Auto Owners) appeals as of right the trial court's order granting Richard Brehmer's motion for judgment notwithstanding the verdict (JNOV). We reverse.

## I. FACTS AND PROCEDURAL HISTORY

### A. TRIAL TESTIMONY

Brehmer and Nicole Rothman were involved in a traffic accident in May 2010. Brehmer testified that he was driving a tractor for the City of Adrian when Rothman ran into it. The tractor flipped over on Brehmer, and his right arm and shoulder were injured. Brehmer had an underinsured motorist policy with Auto Owners. The only issues at trial were whether Brehmer's shoulder injury constituted a serious impairment of a bodily function and whether Brehmer failed to mitigate his damages.

Brehmer testified that he began physical therapy shortly after the accident. In July 2010, Brehmer's family physician referred him to Dr. Michael Diment. Brehmer testified that Dr. Diment prescribed him physical therapy, which he did, but his shoulder continued to hurt. Dr.

-1-

Diment took an MRI of Brehmer's shoulder. Dr. Diment testified that Brehmer had suffered three shoulder injuries: a rotator cuff tear, a deformity to the dimple in the bone, and an injury to the shoulder socket. Brehmer testified that Dr. Diment performed surgery on his shoulder in October 2010.

According to Brehmer, he discussed the exercises he had learned at his prior physical therapy with Dr. Diment, and Dr. Diment told Brehmer to do those exercises at home. Brehmer testified that he did the exercises for 10 to 15 minutes a day, and Dr. Diment said that his at-home exercises were "fine." According to Dr. Diment, he ordered Brehmer to do exercises at home. Dr. Diment acknowledged that in November 2010, he noted in Brehmer's file that Brehmer might need formal physical therapy. However, Dr. Diment opined that Brehmer's at-home exercises were sufficient in lieu of physical therapy. Dr. Diment testified that physical therapy could not address Brehmer's bone dimple or shoulder socket injury.

Brehmer had not improved by April 2011. Dr. Diment told Brehmer that he could have an additional surgery that would manipulate Brehmer's shoulder under anesthesia. Dr. Diment testified that the procedure was "somewhat risky," unpredictable, and that it could lead to a different pain and instability. Brehmer testified that he decided that he did not want to have the surgery because Dr. Diment told him that there was a risk he could lose his arm or that the surgery would make his problem worse. Dr. Diment supported Brehmer's decision not to have further surgery.

Dr. Diment testified that as of September 2011, Brehmer had improved his range of motion with home exercises. Dr. Diment testified that Brehmer was a compliant patient and he believed that Brehmer was doing his at-home exercises. Dr. Diment did not recommend another surgery or physical therapy. Dr. Diment opined that physical therapy at a rehabilitation center would not have given Brehmer a better result than the exercises he did at home.

Aaron Deline, Brehmer's physical therapist until August 2010, testified that he believed that physical therapy would have helped Brehmer to improve his range of motion. Deline acknowledged that a patient needs a doctor's prescription to receive physical therapy and that Dr. Diment did not refer Brehmer back to physical therapy. Deline testified that Brehmer was compliant at physical therapy sessions, but his therapy notes questioned Brehmer's compliance with at-home exercises.

Dr. Joseph Salama testified that he interviewed and examined Brehmer in September 2010 and February 2011. According to Dr. Salama, Brehmer needed formal physical therapy to increase his range of motion and decrease his pain. Dr. Salama would have recommend manipulating Brehmer's shoulder under anesthesia and that, if the manipulation went well, it would have a 70 percent chance of success. Dr. Salama did not believe that Brehmer had failed to comply with Dr. Diment's advice.

Dr. Brian Chodoroff testified that he specializes in physical medicine and rehabilitation and that he reviewed Brehmer's medical records. According to Dr. Chodoroff, Brehmer's home exercises were inadequate, and he should have done physical therapy to increase his range of motion. Dr. Chodoroff also opined that Brehmer might benefit from a manipulation under anesthesia, but testified that if Brehmer did not want to undergo a manipulation, he should at

least obtain a cortisol injection and physical therapy. Dr. Chodoroff testified that he would not expect a patient to get formal physical therapy if his doctor did not prescribe it, and he opined that Brehmer's records did not indicate that he had failed to comply with Dr. Diment's orders.

Dr. Casey Bartman testified that he is an orthopedic surgeon who reviewed Brehmer's medical records. According to Dr. Bartman, Brehmer's shoulder injury was severe and Brehmer would have benefitted from formal physical therapy after surgery because it would have reduced his stiffness and pain. Dr. Bartman opined that a steroid injection and an aggressive course of physical therapy would improve Brehmer's range of motion and decrease his pain. Dr. Bartman testified that there was no evidence that Brehmer had failed to perform his home exercises, but he opined that home exercises are not very beneficial to a shoulder joint injury.

## B. PROCEDURAL HISTORY

The jury awarded Brehmer $150,000 in past noneconomic damages, but it found that Brehmer did not have future noneconomic damages. The jury also found that Brehmer failed to mitigate his damages and it reduced the verdict by $50,000. On April 16, 2013, the trial court entered a judgment on the verdict for $100,000, with various costs and fees.

On May 7, 2013, Brehmer filed a motion for JNOV, new trial, or additur. According to Brehmer, Auto Owners did not meet its burden of proof to show that Brehmer failed to mitigate his damages because it did not show Brehmer failed to follow his doctor's advice. In response, Auto Owners presented several reasons why the jury could have found that Brehmer failed to mitigate his damages, including that Brehmer had failed to participate in formal physical therapy, had refused a surgery that Dr. Diment recommended, and might have financial motivations to fail to seek improvement.

After hearing arguments on the motion, the trial court ruled as follows:

> It is true that the jury completed the verdict form awarding plaintiff 150,000. They subtracted $50,000 for plaintiff's alleged failure to mitigate his damages. They awarded zero dollars for future physical damages. Defendants' expert witness testified if plaintiff had undergone formal physical therapy, even to this day, that being the day of trial, he would've gained greater range of motion or less pain.

> I did not find that in my own assessment, and I was taken [a]back by the jury penalizing [Brehmer] significantly for what they alleged to be failure to mitigate.

> Defendants' experts testified there was no evidence that [Brehmer] failed to follow his doctor's order. Dr. Diment, treating physician, the person in the best position to make a decision about [Brehmer's] actions, testified unequivocally that he never prescribed physical therapy for [Brehmer] and that [Brehmer] made all decisions—and that he made all decisions regarding [Brehmer's] care and treatment, and that they together determined that home exercises were in fact in [Brehmer's] best interest, and Dr. Diment fully supported that determination.

-3-

I think that what was anticipated was not far off the mark, and I think that from the jury verdict's determ—the jury verdict supports that there may very well have been significant confusion with regard to the jurors speculating with regard to [Brehmer's] duty to follow non-treating physicians' recommendations.

If mitigation of damages is in fact a doctrine that seeks to minimize economic harm arising from wrong doing, I don't think that [Brehmer] did anything wrong. I think that it was clear from the testimony that [Brehmer] followed his doctor's orders and that Dr. Diment prescribed and allowed the therapy that he and [Brehmer] thought to be appropriate under [Brehmer's] condition and circumstances.

I do not believe that plaintiff is entitled to a new trial. I do believe that the verdict may have in fact employed improper procedures and in fact demonstrate a mistake of law or fact based upon the evidence that was presented and the jury verdict form that was agreed upon that went with the jury to the jury room for deliberation. I thought that the jury verdict—and would not disturb the jury verdict as to a finding of $150,000. They made a determination based upon on [sic] what they heard. And with the exception of the reduction, which I believe does in fact result in a problem that needs the Court's attention, and it is supported by the evidence as I [sic] was heard during trial. [Brehmer] followed his treating physician's orders, jury awarded 150,000 and subtracted 50,000 based upon mitigation of damages. I don't believe that [Brehmer] didn't do what he needed to do, and I, therefore, order an additur of the amount deducted, awarding plaintiff $150,000.

At a subsequent hearing, the trial court clarified that it did not mean to grant an additur, it meant to grant JNOV. Auto Owners now appeals.

II. ANALYSIS

Auto Owners contends that the trial court improperly granted Brehmer's motion for JNOV because a question of fact existed regarding whether Brehmer mitigated his damages. We agree.

This Court reviews de novo a trial court's decision on a motion for JNOV. *Genna v Jackson*, 286 Mich App 413, 417; 781 NW2d 124 (2009). We view the evidence and inferences arising from the evidence in the light most favorable to the nonmoving party to determine whether the moving party was entitled to judgment as a matter of law. *Id*. The trial court should only grant a motion for JNOV "when there is insufficient evidence presented to create a triable issue for the jury." In contrast, "[w]hen reasonable jurors could honestly reach different conclusions regarding the evidence, the jury verdict must stand." *Id*. JNOV is only appropriate when the evidence "fails to establish a claim as a matter of law[.]" *Barrett v Kirtland Community College*, 245 Mich App 306, 311; 628 NW2d 63 (2001).

The doctrine of mitigation of damages provides that a party must minimize the harm that arises from another party's wrongdoing. *Morris v Clawson Tank Co*, 459 Mich 256, 263; 587

-4-

NW2d 253 (1998). When a person has been injured, "it is incumbent upon [that person] to use such means as are reasonable under the circumstances to avoid or minimize the damages." *Id*. (quotation marks and citation omitted). An injured party's duty to exercise reasonable care to minimize damages includes the obligation to obtain proper medical or surgical treatment. *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 91; 393 NW2d 356 (1986). The defendant has the burden to prove that a plaintiff failed to make a reasonable effort to mitigate his or her damages. *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 539; 854 NW2d 152 (2014). "The question whether the plaintiff's efforts to mitigate damages were reasonable under the circumstances is one for the trier of fact." *Id*.

There are two flaws with the trial court's ruling in this case. First, the trial court improperly expanded the elements of mitigation to include an element that does not exist: that the plaintiff disobeyed his or her doctor's orders. This Court is unable to find support for such an element. The doctrine of mitigation of damages does not ask whether a specific plaintiff obeyed or disobeyed his or her doctor's orders; it asks whether a person used reasonable means to minimize his or her damages. See *Morris*, 459 Mich at 263; *Landin*, 305 Mich App at 539. Whether a plaintiff complied with his or her doctor's orders is certainly *a* factor concerning the plaintiff's reasonableness. See *Klanseck*, 426 Mich at 91. But it is only *one* factor, and the jury must consider the totality of the circumstances. See *Morris*, 459 Mich at 273. To the extent that the trial court determined that Auto Owners failed as a matter of law to establish that Brehmer failed to mitigate his damages, we conclude that it erred.

Second, the trial court usurped the jury's role to determine what was reasonable under the circumstances. In essence, the trial court in this case acted as an impermissible "thirteenth juror" when it substituted its determination of the weight of the evidence for the jury's determination. Michigan disapproves of allowing a trial court judge to sit as a thirteenth juror. See *People v Lemmon*, 456 Mich 625, 638-640; 576 NW2d 129 (1998). The trial court's ruling is replete with statements of belief that are based on its own assessments of the weight of the evidence. This is not the proper standard under which to analyze a motion for JNOV. The question is whether reasonable jurors could honestly reach different conclusions. *Genna*, 286 Mich App at 417.

Our review of the record indicates that there were at least two reasons why reasonable jurors could have reached different conclusions regarding whether Brehmer mitigated his damages. The jury could have found that Brehmer's decision not to have additional surgery was unreasonable. It is undisputed that Dr. Diment supported Brehmer's decision not to have a second surgery because of the possible adverse consequences. However, a variety of doctors testified that surgery was likely to improve Brehmer's condition. That these doctors did not treat Brehmer went to the weight of the evidence. This conflicting evidence created at least a triable issue of fact regarding whether Brehmer's refusal of further surgery was reasonable.

The jury also could have found that Brehmer failed to reasonably perform his physical therapy. Dr. Diment testified that he believed that Brehmer was doing at-home physical therapy. But Brehmer testified that he only exercised 10 to 15 minutes a day or when his shoulder "seized up[.]" Deline indicated that there were reasons to believe that Brehmer was not properly complying with at-home therapy, and Dr. Chodoroff referred to Brehmer's home therapy setup as "pretty lame." Dr. Chodoroff testified that Brehmer's outcome indicated that he was not

successfully rehabilitating himself. This evidence created at least a triable issue of fact regarding whether Brehmer took reasonable steps to address his condition through physical therapy.

For these reasons, we conclude that the trial court erred when it set aside the jury's verdict regarding whether Brehmer mitigated his damages. We do not reach the remainder of Auto Owners's issues because our conclusion renders resolution of those issues unnecessary.

We reverse the trial court's grant of Brehmer's motion for JNOV and remand for the trial court to reinstate the jury verdict. We do not retain jurisdiction. As the prevailing party, Auto Owners may tax costs. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell