# STATE OF MICHIGAN

# COURT OF APPEALS

MARTEZ TILLMAN,

　　　　　Plaintiff-Appellant,

v

PERFECT PITCHER SPORTS PUB, INC.,

　　　　　Defendant-Appellee.

<div style="float:right">

UNPUBLISHED
December 6, 2016

No. 328520
Wayne Circuit Court
LC No. 11-004876-NO

</div>

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

RIORDAN, J. (*dissenting*).

Because the trial court properly granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(10), I would affirm.[1]

There were three incidents at the Perfect Pitcher Sports Pub, Inc., on the night in question. The third, and final, incident resulted in a bullet striking plaintiff in the wrist. The evidence on record, viewed in the light most favorable to the nonmoving party, indicates that plaintiff arrived at the bar at approximately 11:30 p.m. on March 11, 2011, in order to assist, without pay, DJ Angel Live, who had been playing music since 9 p.m. that evening. In his deposition, plaintiff testified that the first incident of relevance occurred about 12:15 a.m., when

---

[1] It is not the first time that this Court has seen this premises liability case. Plaintiff's first claim of appeal challenged the trial court's grant of summary disposition in favor of defendant. *Tillman v Perfect Pitcher Sports Pub, Inc*, unpublished opinion per curiam of the Court of Appeals, issued October 22, 2013 (Docket No. 309121) (*Tillman I*). In *Tillman I*, this Court agreed with plaintiff's argument that he had sufficiently raised questions of fact regarding defendant's breach of its duty to expedite the involvement of the police, and reversed the trial court's decision and remanded the case for further proceedings. *Id*. at 3-4. The partial dissent would have affirmed, agreeing with the trial court's conclusion that the event that triggered defendant's duty to call the police was at 1:40 a.m. when the crowd surged outside. *Id*. at 3.

On remand, defendant then filed a second motion for summary disposition raising the issue that plaintiff had not established that its alleged delay in calling the police was the cause in fact of plaintiff's injury.

-1-

a short, visibly intoxicated, white man deliberately bumped or shoved plaintiff's friend with his shoulder. Plaintiff, concerned that there would be a fight, went over and calmed the two men down. No blows were exchanged and tensions seemingly diffused. In the second incident, about an hour later, another man, this time an African-American who was taller than the white man involved in the first incident, approached plaintiff's cousin George, and they exchanged words that plaintiff could not hear but made him believe they were about to fight. Plaintiff eventually talked the men into calming down, although people had to hold them both back to keep them from coming to blows. Plaintiff believed that the two men involved in the different scuffles with his friend and cousin were part of the same gang, and he thought both were armed and intoxicated. He also believed that many other intoxicated gang members were at the bar that night.

The third incident occurred around 1:40 a.m. when, in the middle of a rap song plaintiff was performing, the crowd started getting rowdy. Everyone seemed to decide to leave at the same time, and plaintiff saw his cousin George leave the bar with the man who had been aggressive with him. Plaintiff hurried after them to make sure that George would be alright, but as soon as he got outside, he heard a gunshot and felt that he had been shot in the left arm. While everyone was leaving the bar, the bouncer called 911 to report that people had guns and were shouting that they were going outside to shoot it out. The police arrived less than five minutes later, but by then plaintiff was already injured, and people were leaving by the carload. Another of plaintiff's cousins drove him immediately to the hospital. The shooter was never identified.

Plaintiff testified in deposition that he had been looking directly at the tall, African-American man when he was struck by the bullet and that he did not believe that the tall man had shot him. Ultimately, plaintiff does not know who fired the shot that struck him, but he was later informed after the incident happened that the tall man had shot plaintiff's cousin outside the bar. He also claims that he heard that the short white man who was involved in the 12:15 a.m. scuffle with his friend had been observed with a weapon outside the bar. More specifically, as to the short man, plaintiff testified, "[M]y brother said he seen that the intoxicated short white guy that I was talking about, he seen him with a gun, too." He also claims that at some point the man whom he was told shot his cousin had given a gun to a bar employee and then had taken it back from the employee just before the shooting. Contrary to plaintiff's claim, a police report states that someone had given an employee a "magazine" for a handgun, which the employee gave to the police after the shooting.

In regard to potential civil liability arising out of criminal acts committed by third parties against patrons on business premises, a merchant has a duty to reasonably expedite the involvement of the police, but "only when the merchant has notice that a third party's criminal acts pose a risk of imminent and foreseeable harm to an identifiable invitee." *Bailey v Schaaf*, 494 Mich 595, 599; 835 NW2d 413 (2013), citing *MacDonald v PKT, Inc*, 464 Mich 322, 338; 628 NW2d 33 (2001).

On remand, defendant filed a new motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff ultimately is relying upon pure speculation and conjecture in order to show that but for the failure to contact the police earlier in the evening, plaintiff would not have been shot and injured. Accordingly, defendant contended that plaintiff could not establish the requisite causal link between the alleged failure to reasonably expedite the

involvement of the police and his damages. Defendant additionally argued that "actions that occurred outside of the bar, after the plaintiff left the bar, constitute[d] intervening/superseding causes of the plaintiff's injuries[.]" The trial court agreed with defendant's causation argument and granted summary disposition in favor of defendant under MCR 2.116(C)(10).

This Court reviews de novo a trial court's decision on a motion for summary disposition, *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), as well as questions of law in general, *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). With respect to a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), observed:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Quotation marks and citations omitted.]

" 'In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) *the breach was the proximate cause of the plaintiff's injury*, and (4) the plaintiff suffered damages.' " *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013) (emphasis added), quoting *Benton v Dart Props Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). Establishing causation entails proving "two separate elements: (1) cause in fact, and (2) legal cause, also known as 'proximate cause.' " *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994) (citation omitted). Circumstantial evidence and reasonable inferences arising from the evidence can be utilized to establish causation. *Id.* at 163-164. But it is not sufficient to proffer "a causation theory that, while factually supported, is, at best, just as possible as another theory." *Id.* at 164. A "plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 164-165. "[L]itigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess." *Id.* at 174. The *Skinner* Court further observed that " '[t]he evidence need not negate all other possible causes' " and that absolute certainty relative to causation is not required. *Id.* at 166, quoting 57A Am Jur 2d, Negligence, § 461, p 442. Proximate cause is shown by an act or a failure to act that in its natural and continuous sequence—unbroken by any unforeseen intervening and superseding cause—produces an injury that otherwise would not have occurred. *Auto-Owners Ins Co v Seils*,

310 Mich App 132, 157-158; 871 NW2d 530 (2015). "Normally, the existence of cause in fact is a question for the jury to decide, but if there is no issue of material fact, the question may be decided by the court." *Genna v Jackson*, 286 Mich App 413, 418; 781 NW2d 124 (2009).

Plaintiff asserts that the injury would not have happened had defendant called the police after the first or second incident, which occurred about 90 minutes and 30 minutes, respectively, before a shot was fired. But plaintiff provides no reason or theory to infer that the ultimate outcome would have been any different had the police "quelled the brewing disturbance," or had charged some unknown person with a gun-related offense, as opposed to when defendant and the Perfect Pitcher's owner "quelled" the disturbance without the help of the police. Further, it is not clear whether there was a gun seen early in the evening or whether it was a magazine clip that was handed from an unknown bar patron to an employee. Even if the police had been called, it takes a speculative leap to surmise that there would not have been gunfire outside of the Perfect Pitcher or that plaintiff would not have been struck by a bullet as a result of such a call. See *Bailey*, 494 Mich at 599; *Skinner*, 445 Mich at 163-165.

*Skinner* makes it clear that the burden is on plaintiff to show that, under his theory of causation, had defendant called the police earlier in the evening, it is more likely than not that plaintiff would have been unharmed. Although it is possible or plausible that plaintiff would not have been shot if the police had been called, the record before this Court is not sufficient under the principles and precedent set forth in *Skinner* to establish a causal link.

Accordingly, the trial court did not err in granting defendant's motion for summary disposition.

/s/ Michael J. Riordan