# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF KENNETH GENE OWENS, by
ROBIN M. OWENS, Personal Representative,

        Plaintiff-Appellee,

v

MANTHA MANAGEMENT GROUP, INC.,
doing business as TIM HORTON'S OF
WATERFORD,

        Defendant-Appellant,

and

MECO PROPERTY MAINTENANCE, INC.,
LEONARD C. CARNAGHI, INC., NAGLE
PAVING COMPANY, THD DONUT
DELAWARE, INC., and TIM DONUTS US
LIMITED, INC.,

        Defendants.

UNPUBLISHED
June 28, 2018

No. 338392
Oakland Circuit Court
LC No. 2016-152752-NO

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Mantha Management Group, Inc. (Mantha), doing business as Tim Horton's of Waterford, appeals by leave granted the trial court's order denying its motion for summary disposition in this premises liability action involving the death of a patron caused by a fall at Mantha's establishment. We reverse and remand for entry of judgment in favor of Mantha.

Decedent was a regular customer at the restaurant, and on a frigid morning on January 20, 2014, he had exited the business and was evidently returning to his car when he ended up on the ground of the parking lot, suffering a fractured skull and subdural hematoma that resulted in his death ten days later. A drive-through customer reported to an employee that there was a "man down in the parking lot," and responding restaurant personnel found decedent on the ground with blood coming from his right ear. There was no evidence of anyone witnessing decedent fall to the ground, no restaurant surveillance camera was pointed in the area where

-1-

decedent was found, and decedent was unable to communicate what had occurred. In an amended complaint, plaintiff alleged that "[a]s [d]ecedent attempted to reach his vehicle by the only means possible, he slipped and fell on [an] icy patch created by the design, negligent maintenance, or negligent affirmative activities of . . . Mantha, or its agents, . . . which increased the hazard posed by a natural accumulation of ice and snow by introducing a new element of danger not previously present, or caused an artificial accumulation of ice on the parking lot." At the heart of plaintiff's suit was the claim of an inadequate drainage system that allowed pooling of water and thus icing in cold weather. In its motion for summary disposition brought under MCR 2.116(C)(10), Mantha argued that there was no genuine issue of material fact that plaintiff personal representative could not establish causation and that any hazard was open and obvious. In a cursory order, the trial court simply ruled that genuine issues of material fact existed. Mantha appeals as of right.[1]

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court enunciated the governing principles applicable to motions for summary disposition brought under MCR 2.116(C)(10):

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

"Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994); see also *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010) (a court must draw all reasonable inferences in favor of the nonmoving party).

We first address the causation issue. " 'In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) *the breach was the . . . cause of the plaintiff's injury*, and (4) the plaintiff

---

[1] The other defendants named in plaintiff's complaint are not part of this appeal.

suffered damages.' " *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013) (emphasis added), quoting *Benton v Dart Props Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). Establishing causation entails proving "two separate elements: (1) cause in fact, and (2) legal cause, also known as 'proximate cause.' " *Skinner*, 445 Mich at 162-163. In *Skinner,* our Supreme Court explained:

> The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. A plaintiff must adequately establish cause in fact in order for legal cause or "proximate cause" to become a relevant issue. [*Id.* at 163 (citations omitted).]

Circumstantial evidence and reasonable inferences arising from the evidence can be utilized to establish causation. *Id.* at 163-164. But it is not sufficient to proffer "a causation theory that, while factually supported, is, at best, just as possible as another theory." *Id.* at 164. A "plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 164-165. "[L]itigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess." *Id.* at 174. The *Skinner* Court further observed that " '[t]he evidence need not negate all other possible causes' " and that absolute certainty relative to causation is not required. *Id.* at 166, quoting 57A Am Jur 2d, Negligence, § 461, p 442. "Normally, the existence of cause in fact is a question for the jury to decide, but if there is no issue of material fact, the question may be decided by the court." *Genna v Jackson*, 286 Mich App 413, 418; 781 NW2d 124 (2009). A court must dismiss an action when causation remains an issue of pure speculation and conjecture, or the probabilities are evenly balanced at best. *Id.*

Plaintiff attempts to create a genuine issue of material fact on causation out of circumstantial evidence and purported reasonable inferences. There was some testimony indicating the presence of ice in the parking lot; however, even if there was ice where decedent fell, a jury, ultimately, would be forced to guess whether it was the ice that caused decedent to fall and land on the ground. Employing speculation and conjecture would be the only way for the trier of fact to find that an icy parking lot was the cause in fact of the fall. On the existing record, it is just as possible that decedent stumbled, tripped, had a leg buckle, or suffered some type of medical event, causing him to fall to the ground, without the ice having any bearing on the matter. Decedent, who was 72 years old, had dropped foot, occasionally wore a leg brace, and walked with a limp. Plaintiff did not present evidence from which a jury could conclude that more likely than not, decedent lost his footing due to ice.

Plaintiff cites the doctrine of res ipsa loquitur, asserting that this "Court may take judicial notice that falling down to such an extent as to die does not normally happen without some out-of-the ordinary reason." "The doctrine of res ipsa loquitur permits an inference of negligence from circumstantial evidence when a party is otherwise unable to prove the occurrence of a negligent act." *Taylor v Kent Radiology, PC*, 286 Mich App 490, 518; 780 NW2d 900 (2009). Initially, we find that the doctrine, even assuming it was implicated in this case, does not serve

the purpose sought by plaintiff. Plaintiff is not in need of "an inference of negligence," which issue would pertain to actions or inactions by Mantha that allowed the presence of ice in the parking lot, i.e., the occurrence of a negligent act; rather, plaintiff is essentially seeking an inference that decedent slipped on ice, which contention we have already rejected.[2] Moreover, to invoke the doctrine of res ipsa loquitur, a plaintiff must demonstrate, amongst other requirements, that the event was of a kind that ordinarily does not occur in the absence of a person's negligence. *Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005). Even under plaintiff's misguided context, it simply cannot be concluded that a fall in a parking lot does not ordinarily occur absent negligence (or ice), even if the fall results in death, which factor may merely reflect the susceptibilities of the particular person who fell or the nature of the fall, e.g., falling and hitting one's head as opposed to one's shoulder. Res ipsa loquitur simply has no application in this case.

Finally, plaintiff filed a motion in the trial court seeking an adverse-inference jury instruction because Mantha failed to produce an incident report that was purportedly lost, and the court, prior to granting summary disposition, had ruled that it would provide such an instruction, M Civ JI 6.01, to the jury unless Mantha established that it was inappropriate. This jury instruction, at most, would have allowed the jurors, at their discretion, to infer that the incident report contained information adverse to Mantha. M Civ JI 6.01. Plaintiff argues that a trial court should equally be permitted to consider an adverse inference in the context of ruling on a motion for summary disposition where there has been spoliation of evidence. Here, the adverse inference necessary to overcome plaintiff's causation problem would be to infer that the incident report indicated that decedent slipped and fell on ice in the parking lot or that a witness observed him do so. Given the dearth of information in the trial court's ruling, we have no idea whether the court contemplated *any* adverse inference in denying the motion for summary disposition, let alone an adverse inference that concerned causation.[3] MCR 2.116(G)(4) provides that "[w]hen a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116 makes no reference to adverse inferences arising from spoliation, and a discretionary inference would not appear to constitute evidence setting forth specific facts. However, MCR 2.116(G)(4) additionally provides that, where a party has failed to respond to a (C)(10) motion with proper documentary evidence, "judgment, *if appropriate*, shall be entered against him or her." (Emphasis added.) The emphasized language in MCR 2.116(G)(4) could

---

[2] As an example, while res ipsa loquitur might allow an inference of negligence by a moving company handling a piano that falls off the balcony of a third story apartment and crushes a pedestrian below, res ipsa loquitur is not relevant to showing that the pedestrian was killed by a falling piano. Here, res ipsa loquitur is not relevant to showing that decedent slipped on ice and suffered harm.

[3] Considering that the trial court's ruling was not definitive with respect to instructing the jury on M Civ JI 6.01, allowing for Mantha to show that the instruction would not be appropriate, we doubt that the court invoked its own adverse inference in denying the motion for summary disposition.

conceivably be employed to preclude summary disposition in some instances based on an adverse inference when spoliation has occurred.[4] We ultimately decline to answer the question, given that even if plaintiff's case was not flawed on the element of causation and assuming that decedent actually slipped and fell on the alleged black ice, the condition was open and obvious as a matter of law.

Consideration regarding whether a danger or defect is open and obvious is an integral aspect of defining the duty owed by an invitor to an invitee. *Hoffner*, 492 Mich at 460. A possessor of land does not owe a duty to protect or warn an invitee relative to dangers that are open and obvious. *Id.* This is "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id.* at 461. "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id.* The required analysis involves examination of the objective nature of the condition of the premises. *Id.* It is well established that wintry conditions can be characterized as open and obvious, and "Michigan courts thus ask whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger." *Id.* at 464.

As indicated by Mantha, there have been several Supreme Court orders that must be taken into consideration. In *Ragnoli v North Oakland-North Macomb Imaging, Inc*, 500 Mich 967 (2017), our Supreme Court reversed a decision by this Court, ruling that "[t]he trial court correctly held that, notwithstanding the low lighting in the parking lot, the presence of wintery weather conditions and of ice on the ground elsewhere on the premises rendered the risk of a black ice patch 'open and obvious such that a reasonably prudent person would foresee the danger' of slipping and falling in the parking lot." (Citation omitted.)

In *Cole v Henry Ford Health Sys*, 497 Mich 881 (2014), the Supreme Court similarly stated:

> Here, the so-called "black ice" was detected by four other witnesses who viewed the premises after the plaintiff's accident. There were several patches of ice evident in the area where the plaintiff fell. In addition, there were numerous indicia of a potentially hazardous condition being present, including seven inches of snow on the ground, some precipitation the previous day, and a recent thaw followed by consistent temperatures below freezing. A reasonably prudent person would foresee the danger of icy conditions on the mid-winter night the plaintiff's accident occurred. [Citation omitted.]

In *Janson v Sajewski Funeral Home, Inc.*, 486 Mich 934, 935 (2010), the Supreme Court ruled:

---

[4] To be clear, we are not finding that Mantha actually engaged in spoliation of evidence.

"[B]lack ice" conditions [are rendered] open and obvious when there are indicia of a potentially hazardous condition, including the specific weather conditions present at the time of the plaintiff's fall. Here, the slip and fall occurred in winter, with temperatures at all times below freezing, snow present around the defendant's premises, mist and light freezing rain falling earlier in the day, and light snow falling during the period prior to the plaintiff's fall in the evening. These wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection. [Citations and quotation marks omitted.]

In *Janson*, *id.*, the Supreme Court relied on and favorably cited this Court's opinion in *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474; 760 NW2d 287 (2008), and specifically page 483 of the opinion, where the *Slaughter* panel stated:

The overriding principle behind the many definitions of black ice is that it is either invisible or nearly invisible, transparent, or nearly transparent. Such definition is inherently inconsistent with the open and obvious danger doctrine. Consequently, we decline to extend the doctrine to black ice *without evidence that the black ice in question would have been visible on casual inspection before the fall or without other indicia of a potentially hazardous condition.* [Emphasis added.]

In light of this emphasized language, and considering the Supreme Court's orders, the question here is whether there exists a genuine issue of material fact regarding whether the ice was visible on casual inspection, *or* whether there were other indicia of the potential for ice in the parking lot. The accident occurred in the early morning of January 20, 2014, and it was frigid and icy outside, the temperature having dropped to below zero the night before. The weather was described as being very, very cold, and there was evidence that trace precipitation had fallen during the night. Further, there was snow on the grassy area around the restaurant. Under these circumstances and, once again, assuming that decedent slipped and fell on ice, there existed indicia of the potential for ice in the parking lot. The presumed ice was thus open and obvious as a matter of law.

Plaintiff argues that even if the hazard was open and obvious, special aspects existed that made the hazard unreasonably dangerous and effectively unavoidable. On the issue of special aspects, an exception to the duty owed for open and obvious dangers arises when special aspects of a condition make even an open and obvious risk unreasonable. *Hoffner*, 492 Mich at 461. Special aspects exist when an open and obvious hazard remains unreasonably dangerous or when it is effectively unavoidable. *Id.* at 461-463. The *Hoffner* Court further observed:

[W]hen confronted with an issue concerning an open and obvious hazard, Michigan courts should hew closely to the principles previously discussed. It bears repeating that exceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited,* extreme situations. Thus, an "unreasonably dangerous" hazard must be just that—not just a dangerous hazard, but one that is *unreasonably* so. And it must be *more than* theoretically or retrospectively dangerous, because even the most

unassuming situation can often be dangerous under the wrong set of circumstances. An "effectively unavoidable" hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a "special aspect" characterized by its *unreasonable risk of harm*. [*Id.* at 472-473 (citations omitted; emphases in original).]

It is only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm that can serve to remove a condition from the open and obvious danger doctrine. *Id.* at 472 n 38.

We conclude, as a matter of law, that there were no special aspects removing the icy condition from the open and obvious danger doctrine. The ice in the parking lot created a typical slip and fall hazard that did not constitute a limited extreme situation. Although we fully recognize and appreciate that a death occurred, "even the most unassuming situation can often be dangerous under the wrong set of circumstances." *Hoffner*, 492 Mich at 472. The icy parking lot did not generally pose a uniquely high likelihood of harm or severity of harm; the condition must be more than theoretically or retrospectively dangerous. *Id.*; see also *Corey v Davenport College of Business (On Remand)*, 251 Mich App 1, 6; 649 NW2d 392 (2002) (icy and snowy steps did not give rise to a uniquely high likelihood of harm or severity of harm). Furthermore, the hazard was not effectively unavoidable, considering that decedent had entered the restaurant without a problem, that there was no evidence that all available paths to decedent's car were covered with ice, and that there was no evidence that decedent's parking options were limited to the spot he chose near the drain. Indeed, there was evidence that he had a handicapped permit, allowing for parking up closer to the restaurant. We cannot conclude that for all practical purposes, decedent was required to confront the alleged icy hazard under the circumstances. *Hoffner*, 492 Mich at 472.

Reversed and remanded for entry of an order granting summary disposition in favor of Mantha. We do not retain jurisdiction. Having fully prevailed on appeal, we award taxable costs to Mantha under MCR 7.219.

/s/ William B. Murphy
/s/ Kathleen Jansen