# STATE OF MICHIGAN

# COURT OF APPEALS

MARTEZ TILLMAN,

        Plaintiff-Appellant,

v

PERFECT PITCHER SPORTS PUB, INC.,

        Defendant-Appellee.

UNPUBLISHED
December 6, 2016

No.   328520
Wayne Circuit Court
LC No.   11-004876-NO

Before:  JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Plaintiff and his cousin were shot outside of defendant's bar shortly after plaintiff had stopped performing his music inside the establishment.  The police were summoned by defendant's bouncer around the time the shooting erupted, arriving at the scene within five minutes, at which point many patrons had already scattered.  There was evidence that within a two-hour period leading up to the shooting, widespread criminal activity was afoot inside the bar and there had been at least two altercations, yet defendant did not contact the police.  Plaintiff filed suit, alleging that defendant had failed to reasonably expedite the involvement of the police before the shooting began despite the risk of imminent harm created by the criminal activity and the two incidents or altercations, of which defendant was fully aware.  The trial court summarily dismissed the action, concluding as a matter of law under MCR 2.116(C)(10) that defendant had no duty to contact the police before plaintiff and his cousin were shot.  This Court reversed, holding that "plaintiff submitted sufficient evidence to create a question of material fact whether or not defendant violated its duty to timely contact the police." *Tillman v Perfect Pitcher Sports Pub, Inc*, unpublished opinion per curiam of the Court of Appeals, issued October 22, 2013 (Docket No. 309121).  On remand, the trial court again summarily dismissed the suit, ruling that plaintiff had failed to submit documentary evidence sufficient to create an issue of fact with respect to the element of causation.  Plaintiff appeals as of right, and we again reverse.

In regard to potential civil liability arising out of criminal acts committed by third parties against patrons on business premises, a merchant has a duty to reasonably expedite the involvement of the police, but "only when the merchant has notice that a third party's criminal acts pose a risk of imminent and foreseeable harm to an identifiable invitee." *Bailey v Schaaf*, 494 Mich 595, 599; 835 NW2d 413 (2013), citing *MacDonald v PKT, Inc*, 464 Mich 322, 338; 628 NW2d 33 (2001).  The earlier panel in *Tillman* held:

Viewing the facts in the light most favorable to plaintiff, several crimes likely occurred at the bar during the first and second incidents, including an assault on plaintiff's companion, MCL 750.81, the carrying of concealed weapon(s), MCL 750.227, and the possession/use of a weapon while intoxicated, MCL 750.237, as well as the civil infraction of carrying a concealed weapon in a bar, MCL 28.425o(d). More generally, the bar was full of highly intoxicated gang members, many of whom were carrying firearms.

Given these facts, we conclude that a reasonable jury could conclude that the bar's owner and/or employees, having knowledge of criminal acts including: two scuffles involving the same individual, the presence of numerous highly intoxicated gang members serving themselves, and the presence of one or more concealed weapons in possession of intoxicated persons, could conclude that there was a specific situation occurring on the premises that would cause a reasonable person to recognize a risk of imminent harm. Plaintiff was an identifiable victim of that harm because he was within the range of the risk of harm created by the perpetrator's conduct. Indeed, plaintiff and his companion were directly involved in several of the incidents that escalated to the shooting. Accordingly, we reverse the trial court's grant of summary disposition in favor of defendant. [*Tillman*, unpub op at 3 (citations, alteration brackets, and quotation marks omitted).]

On remand, defendant filed a new motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff ultimately has to rely on pure speculation and conjecture in order to show that but for the failure to contact the police earlier in the evening, plaintiff would not have been shot and injured.[1]  Accordingly, defendant contended that plaintiff could not establish the requisite causal link between the alleged failure to reasonably expedite the involvement of the police and damages.  Defendant additionally argued that "actions that occurred outside of the bar, after the plaintiff left the bar, constitute[d] intervening/superseding causes of the plaintiff's injuries[.]"  The trial court agreed with defendant's causation argument and granted summary disposition in favor of defendant under MCR 2.116(C)(10).

This Court reviews de novo a trial court's decision on a motion for summary disposition, *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), as well as questions of law in general, *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).  With respect to a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), observed:

---

[1] In its motion, defendant asserted that "even if the police had been called earlier in the evening, it is speculation as to whether the gang members would have engaged in gun fire outside of the bar, down the street, in another neighborhood or whether the plaintiff would have been struck; for that matter, there is no evidence in this case that the plaintiff was even an intended recipient of the gun fire."

In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

" 'In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) *the breach was the proximate cause of the plaintiff's injury*, and (4) the plaintiff suffered damages.' " *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013) (emphasis added), quoting *Benton v Dart Props Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). Establishing causation entails proving "two separate elements: (1) cause in fact, and (2) legal cause, also known as 'proximate cause.' " *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994) (citation omitted). In *Skinner*, our Supreme Court explained:

The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. A plaintiff must adequately establish cause in fact in order for legal cause or "proximate cause" to become a relevant issue. [*Id.* at 163 (citations omitted).]

Circumstantial evidence and reasonable inferences arising from the evidence can be utilized to establish causation. *Id.* at 163-164. But it is not sufficient to proffer "a causation theory that, while factually supported, is, at best, just as possible as another theory." *Id.* at 164. A "plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 164-165. "[L]itigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess." *Id.* at 174. The *Skinner* Court further observed that " '[t]he evidence need not negate all other possible causes' " and that absolute certainty relative to causation is not required. *Id.* at 166, quoting 57A Am Jur 2d, Negligence, § 461, p 442. Proximate cause is shown by an act or a failure to act that in its natural and continuous sequence – unbroken by any unforeseen intervening and superseding cause – produces an injury that otherwise would not have occurred. *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 157-158; 871 NW2d 530 (2015). "Normally, the existence of cause in fact is a

question for the jury to decide, but if there is no issue of material fact, the question may be decided by the court." *Genna v Jackson*, 286 Mich App 413, 418; 781 NW2d 124 (2009).

Plaintiff testified in his deposition that a short, visibly-intoxicated Caucasian male (hereafter the "short man")[2] intentionally shoved or pushed one of plaintiff's friends while on the dance floor; however, plaintiff was able to diffuse the situation before a fight broke out between the two men, bringing momentary calm. According to plaintiff, about an hour later, there was an altercation between plaintiff's cousin and an African-American male who stood about 6'2" and was carrying a firearm (hereafter the "tall man"). Plaintiff testified that the "tall man" was the aggressor, not plaintiff's cousin. At first, this incident only involved an exchange of words. However, the two men eventually tried to physically assault each other, but they were held back by others.[3] Once again, with help from plaintiff, the situation was calmed, and plaintiff believed that everything was "cool." Plaintiff testified, however, that within a half-hour, drunken and rowdy bar patrons, many of whom were gang members, were out of control and the tall man had moved toward the dance floor, acting as if "he [was] ready to do something." Plaintiff decided to leave the bar and collected his music, while noticing that many of the bar patrons were beginning to exit the establishment, including the tall man, who by this time had retrieved his firearm from a bar employee. Plaintiff testified that just as he stepped outside the bar, he heard a gunshot and was struck in the arm by a bullet.

Plaintiff asserted that he had been looking directly at the tall man when he was struck by the bullet and that he did not believe that the tall man had shot him. Ultimately, plaintiff did not personally know who had fired the shot that injured him, but he claimed that he was later informed that the tall man had shot plaintiff's cousin outside the bar and that the short man from the first incident had been observed carrying a weapon outside the bar. More specifically, as to the short man, plaintiff testified, "[M]y brother said he seen that the intoxicated short *white guy* that I was talking about, he seen him with a gun, too." (Emphasis added.) In an affidavit executed by plaintiff's brother, he averred: that he had observed a visibly intoxicated individual in the bar; that this person had been carrying a gun; that the individual was involved in multiple, increasingly-aggressive arguments and physical altercations as the night unfolded, including the first incident; that defendant's employees were aware of this person's behavior, intoxicated state, and his possession of a gun; and that he saw this individual shoot plaintiff. Plaintiff's brother described this person as "a black man"[4] In an affidavit executed by another one of plaintiff's

---

[2] Plaintiff testified, "I just know he was short and he wasn't too skinny. Could have been five eight at the most. *He was white*." (Emphasis added.)

[3] Plaintiff testified that the tall man had pulled his gun from his waistline and given it to the bouncer before plaintiff's cousin and the tall man attempted to engage in a physical brawl.

[4] Plaintiff's brother averred "[t]hat the black man that shot [plaintiff] was the same visibly intoxicated individual to whom the tavern continued to serve more and more drinks throughout that night, even after he was visibly intoxicated and had been in various altercations."

cousins who was at the bar around the time of the shooting, but whom was not hit by gunfire, he set forth averments similar to those found in the affidavit submitted by plaintiff's brother.[5]

On this record, we have no evidence that the short man actually shot plaintiff. Further, the tall man may or may not have been the "black man" referenced in the affidavits, although it appears that they are one in the same. If they are one in the same, plaintiff was fairly confident that he had not shot plaintiff, where plaintiff was looking directly at him when he was shot. Ultimately, however, there was evidence via the affidavits that a visibly-intoxicated, African-American male, who had been seen in possession of a firearm throughout the night in question and who had engaged in multiple arguments and physical altercations, shot plaintiff.

Plaintiff initially questions whether a proximate cause analysis applies in a premises liability case. Of course, as indicated above, causation is an element that needs to be proven in a premises liability case. *Sanders*, 303 Mich App at 4. Indeed, we are unaware of any civil cause of action that does not have a causation element. Plaintiff next suggests that the prior *Tillman* panel had effectively ruled on the issue of causation and the matter of foreseeability in a manner favorable to plaintiff's case. Plaintiff misconstrues the earlier opinion, given that the only element of the tort action that was at issue at that time concerned whether defendant had a *duty* to summon the police prior to shots being fired. And foreseeability in that context pertained to whether plaintiff was a readily identifiable invitee foreseeably endangered earlier in the evening, such that it triggered a duty owed to plaintiff to expedite the involvement of the police. We are now addressing the element of causation, not duty. Although the concept of foreseeability plays a role in analyzing both the duty and proximate cause elements of a tort, *Moning v Alfono*, 400 Mich 425, 439; 254 NW2d 759 (1977),[6] the foreseeability question for purposes of causation "examin[es] the foreseeability of consequences[] and whether a defendant should be held legally responsible for such consequences[,]" *Skinner*, 445 Mich at 163.

Plaintiff eventually argues, consistent with the law on causation, that the shooting was a foreseeable consequence of failing to timely call the police. We first examine this Court's

---

[5] Plaintiff asserts that the two affidavits showed that the short man who was involved in the first altercation was intoxicated, possessed a gun, engaged in assaultive behavior, and shot plaintiff. The problem with this claim is that the two affiants spoke only of a "black man," while plaintiff clearly testified that the short man who was embroiled in the night's first altercation was Caucasian. It is conceivable that there were different views concerning what constituted the "first" altercation of the night, although the timeframes alluded to in plaintiff's deposition testimony and the affidavits would appear to indicate that all were addressing the same altercation.

[6] "The questions of duty and proximate cause are interrelated because the question whether there is the requisite relationship, giving rise to a duty, and the question whether the cause is so significant and important to be regarded a proximate cause both depend in part on foreseeability – whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable." *Moning*, 400 Mich at 439.

-5-

opinion in *Seils*, which has been heavily briefed by the parties, below and on appeal. The *Seils* panel simply held that a dramshop action was unsustainable because there was insufficient evidence showing that the furnishing of alcohol to a person who was visibly intoxicated was the proximate cause of injuries and a death, which resulted from the intoxicated person committing intentional assaults and premeditated and deliberate murder. *Seils*, 310 Mich App at 154-162. The Court held that, under the facts presented, it was not reasonably foreseeable, nor would the defendants have been put on notice, that providing the alcohol to the visibly intoxicated individual would lead that person to commit deliberate, premeditated crimes. *Id.* at 161. We fail to see how *Seils* has any real bearing on this case. We conclude that a shooting is a reasonably foreseeable consequence of failing to call the police regarding a visibly-intoxicated person who is engaging in assaultive behavior while in the possession of a firearm and who then discharges the weapon at another person. *Seils* is simply not on point and easily distinguishable. Plaintiff is thus correct that the shooting was a foreseeable consequence, thereby satisfying one of the two sub-elements that comprise the general element of causation. Plaintiff must also establish the other sub-element of "cause in fact," which requires a "but for" showing. *Skinner*, 445 Mich at 162-163.

We hold that the documentary evidence was sufficient to create a genuine issue of material fact regarding whether it was more likely than not that "but for" defendant's failure to contact the police earlier, plaintiff's gunshot injury would not have occurred. The two affidavits submitted by plaintiff indicated that a visibly-intoxicated, African-American male, who had been seen in possession of a firearm throughout the night in question and who had engaged in multiple arguments and physical altercations, shot plaintiff. Accordingly, there was evidence that the shooter was engaged in criminal activity earlier in the night, including, for instance, possession of a weapon while intoxicated, MCL 750.237(1), a 93-day misdemeanor when no one has been injured, MCL 750.237(2). And under MCL 764.15(1)(d), a police officer, without a warrant, may arrest a person when the "officer has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days . . . has been committed and reasonable cause to believe the person committed it." To the extent that the shooter had committed an assault or battery, the shooter would have also been subject to arrest under MCL 750.81(1) (assault and battery; a 93-day misdemeanor), and MCL 764.15(1)(d). Taking the affidavits into consideration in conjunction with the laws of our state, there arises a genuine issue of material fact concerning whether the shooter would have been arrested had defendant called the police following the initial altercations. And had the shooter been arrested, he would not have had the opportunity to shoot plaintiff when he did.

Moreover, there was evidence reflecting that the police had responded very quickly to the 9-1-1 calls, within five minutes, when informed that there were gang members with guns at the club threatening to shoot. Thus, it is reasonable to infer that there would have been a somewhat similar swift response by police to an earlier call about an intoxicated individual with a gun who was having physical altercations with patrons in a gang-saturated environment and, therefore, that the police would have arrived while the shooter was still on the premises. We appreciate that there is inherently some unavoidable level of speculation with respect to whether the police would have actually arrested the shooter, given their discretionary authority. But the evidence revealing criminal activity by the shooter, which, if true, would have provided police with a valid basis to arrest the shooter under the law, sufficed to survive a motion for summary disposition, as

absolute certainty relative to proving causation is not required. *Skinner*, 445 Mich at 166. It is also reasonable to infer that the police, had they chosen not to arrest the shooter, would not have simply allowed the shooter to remain on the premises in a drunken state with a firearm. We reject defendant's arguments to the extent that they suggest that plaintiff had to establish that he would not have been shot at some point in time at whatever location by some gang member aside from the time, place, and manner relative to which the actual shooting transpired. Instead, the causation issue turns on whether the actual shooter would have shot plaintiff just outside the club when he did so that night. And on that issue, there exists a genuine issue of material fact, considering the two affidavits, plaintiff's deposition testimony, the police department's response time that night, and Michigan penal laws.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.

/s/ Kathleen Jansen
/s/ William B. Murphy