*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRANSPORT SYSTEMS, LLC,

Plaintiff/Counterdefendant-Appellant,

v

UNITED ROADLINK, LLC, ZEGHUM
RUKHSHAN, and ABDULLAH FAHD GHALEB
SALEH,

Defendants/Counterplaintiffs-
Appellees.

UNPUBLISHED
June 23, 2025
1:44 PM

No. 367945
Wayne Circuit Court
LC No. 21-009044-CB

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Plaintiff/counterdefendant, Transport Systems, LLC, appeals as of right from the trial court's judgment of no cause of action, following a bench trial, in favor of defendants/counterplaintiffs, United Roadlink, LLC, Zeghum Rukhshan, and Abdullah Fahd Ghaleb Saleh (Abdullah) (collectively, defendants), in this action in which plaintiff alleged breach of contract, tortious interference with a business relationship, civil conspiracy, common-law and statutory conversion, and unjust enrichment against defendants. For the reasons set forth in this opinion, we affirm in part and reverse in part.

## I. BACKGROUND

This case arises from the business relationship between plaintiff and two of its independent contractors, Rukhshan and Abdullah, both of whom plaintiff alleged acted in concert to divert trucking business away from plaintiff to their own trucking company, United Roadlink, which they established along with a third owner, Gabe Nassar, in September 2020.

In July 2017, Rukhshan and Abdullah had each signed an independent contractor agreement (ICA) with plaintiff that included confidentiality provisions. Rukhshan worked as a truck driver for plaintiff and Abdullah performed dispatch services, which allowed him to have access to what plaintiff alleges was confidential company information such as broker lists, driver

lists, and route information. In the fall of 2020 the chief financial officer of plaintiff, Khater Saleh (Khater), became aware that Abdullah and Rukhshan had created United Roadlink, unbeknownst to plaintiff. To stay on as a dispatcher, Abdullah was required to sign a December 28, 2020 noncompete agreement (NCA) which contained provisions that limited his ability to own his own transport carrier and participate in the trucking business once the ICA and NCA with Transport System were terminated.

Because Rukhshan and Abdullah worked with plaintiff as independent contractors, they were aware of its relationships with brokers from whom plaintiff obtained business, and plaintiff alleged that they stole confidential information from plaintiff, using the information to obtain additional business for United Roadlink. Plaintiff filed suit against defendants alleging breach of contract, tortious interference with a business relationship, civil conspiracy, common-law and statutory conversion, and unjust enrichment. Following a three-day bench trial, the parties submitted their proposed findings of fact and conclusions of law at the request of the trial court. The trial court then issued a 21-page written decision including findings of fact, conclusions of law, and a judgment of no cause of action as to all defendants on all counts.[1]

The court's 21-page decision adopted defendants' findings of fact. The court found that the individual defendants never received any training from plaintiff, were never advised as to what was considered proprietary or confidential information of plaintiff, and that they were independent contractors who were never paid by plaintiff (the record suggests they were paid on a commission basis by a third party connected to plaintiff). The court further found that plaintiff's business originated with brokers. A dispatcher would contact drivers to see if they were available, find a load on a load board (which the court found was an open market), and could negotiate with the broker regarding the price of the load. The court found that there was no evidence from any broker indicating that it had been intending to give business to plaintiff, but instead gave it to United Roadlink. The court found that Rukhshan never reached out to any broker to take business away from plaintiff. The court found that United Roadlink was formed in September 2020, with only one owner/operator, Rukhshan, which was prior to Abdullah signing the NCA on December 28, 2020. With regard to both the July 17, 2017 ICA signed by Rukhshan and the July 24, 2017 ICA signed by Abdullah, the trial court found plaintiff did not actually sign either document. Rukhshan and Khater did not know who allegedly signed Rukhshan's July 17, 2017 ICA on behalf of plaintiff, but the trial court found that plaintiff never had any employees and, as a result, whoever signed it did not have the authority to do so. The parties did not dispute that Abdullah's July 24, 2017 ICA was not signed on behalf of plaintiff. Finally, the court found that defendants, in their capacity as independent contractors, did not "steal" or take away preexisting business from plaintiff; rather, they found new business including Behnke Trucking.

On appeal, plaintiff argues that the trial court erred in adopting defendants' proposed findings of fact and conclusions of law without weighing the evidence, assessing the credibility of the witnesses, and conducting its own independent analysis of the legal issues. Our close review

---

[1] The trial court's judgment of no cause of action, for reasons unclear, did not address the merits of defendants' counterclaims and the parties do not argue the issue on appeal; thus, those allegations will not be addressed.

of the record as a whole reflects that the trial court was aware of the issues in the case, as well as the relevant law, and that it factual findings were supported by the record. However, the nature of plaintiffs' arguments regarding the conclusions of law require us to review the trial court's rulings that resulted in a finding of no cause of action as to plaintiff's claims following the bench trial.

## II. STANDARD OF REVIEW

Following a bench trial, the trial court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *Avery v Michigan*, 345 Mich App 705, 715; 9 NW3d 115 (2023). To the extent that plaintiff contends that some of the trial court's factual findings are against the great weight of the evidence, in the context of a bench trial, a great-weight challenge is considered under the "clearly erroneous" standard. *Id*. A trial court's factual finding will be held to be clearly erroneous if not supported by the evidence or if this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*. at 715-716 (citation omitted). In reviewing the trial court's factual findings, this Court affords great deference to the trial court's superior ability to gauge the credibility and demeanor of the witnesses who appeared before the court to testify. *Id*. at 716 (citation omitted).

To the extent these issues require this Court to review the trial court's interpretation of the parties' July 2017 ICAs and the December 28, 2020 NCA, this Court reviews the trial court's interpretation of contractual agreements de novo. *Innovation Ventures, LLC v Liquid Mfg, LLC*, 499 Mich 491, 507; 885 NW2d 861 (2016). The question whether a contract is ambiguous is also a question of law that this Court reviews de novo. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 504; 741 NW2d 539 (2007). Issues of statutory construction are also reviewed de novo. *Bristol Window & Door, Inc v Hoogenstyn*, 250 Mich App 478, 484; 650 NW2d 670 (2002).

The application of MRE 702 is reviewed for an abuse of discretion. *Clerc v Chippewa Co War Mem Hosp*, 267 Mich App 597, 601; 705 NW2d 703 (2005), remanded in part, lv den in part 477 Mich 1067 (2007).

While the validity of a noncompete agreement is generally very fact-specific, when the facts are not in dispute, the reasonableness of a noncompete agreement is a question of law that is reviewed de novo. *Innovation Ventures*, 499 Mich at 507 (citation omitted). This Court also reviews de novo as a question of law the application of the equitable doctrine of unjust enrichment. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006).

## III. ANALYSIS

Because plaintiff has requested this Court to review the trial court's factual findings following a bench trial, we are guided by MCR 2.517, which provides, in pertinent part:

> **(A) Requirements**.
>
> (1) In actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment.

(2) Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts.

(3) The court may state the findings and conclusions on the record or include them in a written opinion.

Quoting MCR 2.517(A)(2), the Court in *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995), observed that the trial court's findings of fact regarding matters of contention at a bench trial will be considered sufficient if they are " ' [b]rief, definite, and pertinent,' " and this Court is left with the impression that the trial court "was aware of the issues in the case, . . . correctly applied the law, and [that] appellate review would not be facilitated by requiring further explanation." See, also, *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015).

## A. PLAINTIFF'S LIABILITY CLAIMS

Plaintiff argues that the trial court erred with regard to the trial court's determination regarding defendants' liability on five separate theories, as well as its determination regarding the damages suffered by plaintiff.

Regarding its breach of contract claim, plaintiff argues that the trial court erred in determining that the ICAs that both Abdullah and Rukhshan signed in July 2017, and the NCA that Abdullah signed in December 2020, were not binding contracts because of the lack of mutual assent, i.e., because plaintiff did not manifest its assent to the agreements. Plaintiff also argues that the trial court erred in concluding that by allowing Abdullah to continue working for the company from December 28, 2020 until July 2021, when plaintiff claims to have terminated the NCA, plaintiff waived the right to enforce the provisions of the unsigned NCA. Plaintiff further argues that the trial court erred in concluding that the December 28, 2020 NCA was ambiguous and unenforceable. Finally, plaintiff asserts that the trial court erred in holding that the individual defendants did not owe it a contractual obligation under the provisions of the July ICAs.

Regarding plaintiff's four other theories of liability, it argues that the trial court erred in dismissing its claim of tortious interference with a business relationship, and that the trial court erred in dismissing its claims for common-law and statutory conversion because it mischaracterized the substance of plaintiff's claims. Plaintiff further argues that the trial court erred in dismissing its claim of unjust enrichment given that the evidence demonstrated Abdullah, in particular, received and retained a benefit working for plaintiff and was unjustly enriched as a result. Finally, plaintiff argues that the trial court erred in dismissing its claim of civil conspiracy by completely adopting defendants' proposed conclusions of law that plaintiff did not make the requisite showing that two or more persons acted to accomplish an unlawful purpose or a lawful purpose by unlawful means, or that the claim was based on an underlying tort. Plaintiff asserts that trial court did not independently analyze the merits of the claim.

Although defendants make various arguments in response to plaintiff's claims, relevant to this appeal is the assertion by defendants that plaintiff's claim for damages against defendants was properly dismissed by the trial court given its speculative nature and absence of proof of a causal relationship.

-4-

## B. CAUSATION AND DAMAGES

Because we find that the trial court did not err when it found that plaintiff's claims for damages, as they pertained to counts III through VI of its complaint, were not proven at trial, we need not decide the issues raised by plaintiff in those counts (i.e., tortious interference, conversion, unjust enrichment, and civil conspiracy). As to plaintiff's claim for damages arising out of defendants' breach of contract, we find that the trial court did not err when it found that those damages were likewise not proven at trial, with the exception of damages in the amount of $28,138.78 for Abdullah's breach of contract as it pertained to an incident in which he did not provide services in a workmanlike manner because the evidence submitted by plaintiff on that issue was sufficient and was not rebutted by defendant Abdullah.

Plaintiff argues that the trial court erred as a matter of law in concluding that its lost profits damages were "speculative." With respect to its breach of contract action, plaintiff argues that the trial court erred in determining that the lost profits that it claimed as damages were not the direct and proximate result of the individual defendants' breach of the July 2017 ICAs and the December 28, 2020 NCA. Similarly, plaintiff contends, with regard to its tort claims, that the alleged conduct of the individual defendants caused plaintiff's damages. Plaintiff also asserts that the trial court erred in holding that its damages were not established with reasonable certainty.

More specifically, plaintiff claimed that it incurred approximately $1 million in lost profits from business it had lost to United Roadlink when the individual defendants acted in concert to steal business from plaintiff using information obtained while working for the company. Therefore, with regard to its breach of contract claim it is necessary to first address whether the $1 million in alleged lost profits was a direct and proximate result of the individual defendants' breach of the July 2017 ICAs and the December 2020 NCA.

### 1. CAUSATION

In Michigan, to recover damages for a breach of contract, our courts follow the rule in *Hadley v Baxendale*, 9 Exch 341; 156 Eng Rep 145 (1854). In *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401; 295 NW2d 50 (1980), our Supreme Court summarized the rule from *Hadley*, stating, in pertinent part:

> [T]he damages recoverable for breach of contract are those that arise naturally from the breach or those that were in contemplation of the parties at the time the contract was made. 5 Corbin, Contracts, § 1007. Application of this principle in the commercial contract situation generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it. [*Kewin*, 409 Mich at 414-415.]

In *Lawrence v Will Darrah & Assoc, Inc*, 445 Mich 1, 12-13; 516 NW2d 43 (1994), our Supreme Court observed that Michigan precedent revealed a "flexible approach when determining the foreseeability of contract damages[,]" and for lost profits to be recoverable under *Hadley* and *Kewin*, the plaintiff must make a showing that the damages are such that they arise naturally from

the breach of the contract, or that they can reasonably be said to have been in the parties' contemplation when they made the contract. This is an objective standard and ensures that the damages are such that the promisor was aware of them, or had reason to be aware of them. *Id*. at 13. The plaintiff must have submitted evidence regarding the element of foreseeability to establish a prima facie case for lost profits. *Id*. at 13, citing Calamari & Perillo, Contract (3d ed), § 14-5, p 595.

The legal principles governing the recovery of damages in a tort action are similar to those in the contract context. For example, in *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83; 706 NW2d 843 (2005), this Court addressed the general rules governing the recovery of damages in the tort context, explaining, in pertinent part:

> The general rule is that remote, contingent, and speculative damages cannot be recovered in Michigan in a tort action. *Sutter v Biggs*, 377 Mich 80, 86, 139 NW2d 684 (1966); *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 524, 687 NW2d 143 (2004). A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable. *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 108, 535 NW2d 529 (1995). Damages, however, are not speculative simply because they cannot be ascertained with mathematical precision. *Ensink*, *supra* at 525; *Hofmann*, *supra* at 108. *Although the result may only be an approximation, it is sufficient if a reasonable basis for computation exists*. *Ensink*, *supra* at 525. [*Id*. at 96 (emphasis added).]

Before damages can be recovered in the tort context, a plaintiff must be able to establish the requisite element of causation. *Kandil-Elsayed v F & O Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). Proving causation in a tort case requires proof of both cause in fact and proximate cause. *Genna v Jackson*, 286 Mich App 413, 418; 781 NW2d 124 (2009). "Cause in fact requires that the harmful result would not have come about but for the defendant's negligent conduct." *Id*. Cause in fact may be established by circumstantial evidence; however, such proof must facilitate reasonable inferences of causation, not mere speculation. *Id*. at 418-419. "A plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 419. "A mere possibility of such causation is not sufficient; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict in favor of the defendant." *Id*. Proximate cause normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). "A plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue." Generally, proximate causation is a factual issue to be decided by the trier of fact; however, if reasonable minds could not differ regarding proximate causation, the court should decide the issue as a matter of law. *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002).

## 2. CAUSATION ISSUES IN THE PRESENT CASE

While the trial court did not emphasize these rules pertaining to causation in its ruling, it did note at the conclusion of its judgment that plaintiff's claim for damages was speculative, and that it had not proven that brokers would have hired plaintiff, instead of United Roadlink, to transport loads of goods. On appeal, as in the trial court, the thrust of defendants' position regarding damages is that plaintiff cannot prove that multiple brokers chose not to use it to transport goods as a result of the misconduct of the individual defendants.

Under a theory of unjust enrichment, a plaintiff must be able to make the requisite showing that the defendant has been unjustly or inequitably enriched at the plaintiff's expense. *Genesee Co Drain Comm'r*, 321 Mich App at 78. Similarly, under both a statutory and common-law theory of conversion, a plaintiff must show that the defendant's actions *caused* the plaintiff's damages. MCL 600.2919a; *Badiee v Brighton Area Schs*, 265 Mich App 343, 366; 695 NW2d 521 (2005). With respect to the statutory conversion claim, MCL 600.2919a(1) specifically provides that "[a] person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees[.]" In the present case, plaintiff sought to treble its damages for its statutory conversion claim. With regard to the tort claim of tortious interference with a business relationship, a plaintiff must show that the individual defendants' intentional interference with an established business relationship caused a breach or termination of the relationship, resulting in damage to the plaintiff. *Badiee*, 265 Mich App at 366.

In support of its damage claim, plaintiff, as it related to Behnke Transportation, produced e-mails and rate and loan confirmation documents from October and November 2020 showing that Abdullah, while working as a dispatcher for plaintiff, contacted Behnke to obtain business on behalf of plaintiff. Once Abdullah made contact with Behnke, and work was sent to Abdullah, he sent a portion of that business to the newly created United Roadlink. The rate and load confirmation documents list Rukhshan as the driver of the transport loads. Plaintiff also introduced into evidence a list of the loads that United Roadlink transported for various brokers for whom plaintiff had also done work, as well as a document which showed plaintiff's incoming revenue for the years 2019, 2020, 2021, and 2022 from these specific brokers.

With regard to the other brokers from whom plaintiff alleged that Abdullah and Rukhshan had diverted business on behalf of United Roadlink, plaintiff did not produce the same documentary evidence. What plaintiff did produce was a listing of the loads that United Roadlink transported for those same brokers, and a financial report that documented the change in the revenue for plaintiff, which, as related to some brokers, showed a decrease in revenue. Khater testified that 90% of plaintiff's business was comprised of dedicated routes that it held with multiple brokers, and because customer service was such an emphasis, it had never lost an account before Abdullah started to divert business. Khater testified that he looked at the customers for plaintiff, as well as the customers for United Roadlink, and "[t]hey're all the same. I've noticed a decrease in Transport Systems and I noticed an increase in [United Roadlink]."[2] For example,

---

[2] While the trial court ruled that plaintiff should have provided expert witness testimony on the issue of damages, this Court has acknowledged that the "[o]pinion testimony of the owner of a business and other persons familiar with his operation as to the amount of damages he suffered by way of lost profits" is admissible. *Uganski v Little Giant Crane & Shovel, Inc*, 35 Mich App 88,

Behnke Transportation provided revenues of $200,000 to plaintiff in 2020, $143,000 in 2021, and then zero in 2022, but then became United Roadlink's number one customer. As another example, Go To Express provided $16,250 in revenue in 2020, $426,855.50 in 2021, and that number dropped to $101,660 in 2022, while at the same time Go To Express became a top customer of United Roadlink. Another broker, XPO, provided plaintiff with $4 million in revenue in 2019, $5 million in revenue in 2020, $11 million in revenue in 2021, but in 2022, that number dropped to under $2 million, while XPO became a top customer of United Roadlink. After performing his lost profits analysis, Khater testified that he saw a direct correlation between the decrease in revenue for plaintiff and the increase in revenue for United Roadlink.[3]

### 3. DID PLAINTIFF PROVE ITS DAMAGES WITH A REASONABLE DEGREE OF CERTAINTY?

If properly proven, lost profits are recoverable as an appropriate element of damages. *Body Rustproofing, Inc v Mich Bell Tel Co*, 149 Mich App 385, 390; 385 NW2d 797 (1986). However, lost profits must be proven with a reasonable degree of certainty, and cannot be based on "mere conjecture or speculation." *Id*. Under Michigan law, a party is only required to establish damages with the level of certainty that the nature of the case allows. *Id*. at 392. Additionally, under Michigan law, lost profits are based on net profits, rather than gross profits. *Getman v Mathews*, 125 Mich App 245, 250; 335 NW2d 671 (1983).

As proof of the amount of its lost profits, plaintiff introduced into evidence United Roadlink's tax documentation for 2021, which listed its revenue as $4,131,296. Then, using its

---

110-111; 192 NW2d 580 (1971). But this Court is not "strictly bound" to follow cases published before November 1, 1990. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018); see also MCR 7.215(J)(1).

[3] Khater was not offered at trial as an expert witness and was not qualified by the court as an expert witness. He testified that his educational background included a bachelor's degree in nutrition science and that he later became a pharmacist. He testified that he was not an accountant or an economist. Instead, he said he started working in the trucking industry for a relative who started a trucking company in 2013, which went out of business in 2015, after which he started working for plaintiff. He testified that he ran the company and was the CFO. However, he also said that he was not an employee of the company; rather, he was an independent contractor. When confronted with the fact that he was not an accountant at trial, he said his testimony was based on "simple math." The only other witness called at trial by plaintiff, other than Khater and the defendants, was Angel Reyes, plaintiff's Director of Safety and Compliance. Reyes likewise testified that he was not an accountant, that his bachelor's degree was in criminal justice management, and suggested that plaintiff's 2019 tax return would be like a foreign language to him.

own allegations of a 10% profit margin[4], which it calculated and applied to United Roadlink's gross revenue, Khater stated that plaintiff's lost profits were in the range of $400,000 for 2021 and $400,000 for 2022. Based on his calculations for 2019 and 2020,[5] Khater stated that plaintiff incurred a total of approximately $1 million in damages for business lost to United Roadlink. Khater specifically testified, "[H]ad [Abdullah] not opened [United Roadlink] while he worked for us, this revenue would've continued to stay with [Transport Systems]."

The trial court determined that plaintiff had no qualified expert witness to provide admissible evidence regarding either the causation of specific damages or the amount of claimed damages by plaintiff and that plaintiff's claim for damages was based on speculation. On the issue of the need for expert testimony, this court has stated:

> In Michigan, MRE 702 instructs the court to analyze whether an expert's testimony will help the factfinder make the ultimate decision in a case. A trial court should use its common sense to decide whether an untrained person would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from experts. [*Zeeland Farm Servs, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 196-197; 555 NW2d 733 (1996) (citations omitted).]

Pursuant to MRE 701, if a witness is not testifying as an expert, then testimony in the form of an opinion is limited to one that is rationally based on the witness's perception and helpful to clearly understanding the witness's testimony or to determining a fact in issue.

The trial court did not err when it deemed it necessary for plaintiff to present expert witness testimony on the issue of lost profits in this case. See *BP1, LLC v Coventry Real Estate Fund III, LLC*, unpublished per curiam opinion of the Court of Appeals, issued September 23, 2014 (Docket Nos. 312579 and 314876), p 10.[6] The issue of lost profits under the unique facts of this case exceeded the common knowledge and experience of an ordinary layperson. See *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 48; 436 NW2d 70 (1989). The alleged lost profits in this case involved millions of dollars of gross receipts from a long list of customers and potential customers, the tax returns of multiple entities, and a determination as to how to calculate projected net profit margins, among other complicated issues. Plaintiff made the decision to present all of this evidence to the finder of fact without testimony from an accountant, economist, or any other expert witness. Instead, plaintiff offered testimony from an independent contractor working as its safety director with no background in accounting, who was admittedly not capable of reviewing relevant financial documents, and an independent contractor working as plaintiff's

---

[4] While defendants challenge plaintiff's calculation of its profit margin as being in the range of 10 to 13% in their brief on appeal, asserting that it was closer to 3%, they did not raise this argument at trial.

[5] Plaintiff did not have tax documentation for United Roadlink for 2019 and 2020, and at the time of trial the 2022 tax documentation was not yet due to be filed.

[6] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

CFO who likewise had no background in accounting or economics and was, instead, a former pharmacist who was running the trucking company based upon on-the-job experience. The trial court correctly held that the damages claim was speculative. Under these facts, we cannot find that the trial court erred when it determined that plaintiff had not met its burden to prove its damages with reasonable certainty. See *Alan Custom Homes Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003).

Because plaintiff may not proceed with claims arising out of tort where the alleged damages are speculative, we likewise hold that the trial court did not err when it dismissed those claims.

## 4. DID ABDULLAH BREACH HIS CONTRACTUAL DUTY TO PROCEED IN A WORKMANLIKE MANNER?

Finally, plaintiff asserted a claim in the amount of $28,138.78 against Abdullah for breach of contract based on his failure to instruct a dispatched driver that a load of perishable goods needed to be refrigerated, which resulted in plaintiff having to pay $28,138.78 in damages to Behnke. The trial court essentially determined that this claim sounded in negligence, not breach of contract, and that neither plaintiff's complaint nor its initial disclosures alleged any claims for negligence. Plaintiff argues that the court erred because Abdullah breached his contract with plaintiff, specifically the ICA, because his failure to instruct the driver about the refrigeration requirement was a breach of his contractual obligation to perform all services in a workmanlike manner. For the reasons stated below, we agree that Abdullah is liable to plaintiff for breach of contract.

Defendants argue that plaintiff's complaint is silent as to any claim for damaged cargo and plaintiff never referenced any claim for damaged cargo in its disclosures or any other filing in this case, other than the final pre-trial order. While it is true that the breach of contract claim in plaintiff's complaint does not specifically reference cargo, it does allege that defendant Abdullah contracted with plaintiff to perform certain dispatch services and that he breached that contract, causing damages to plaintiff in the amount of $28,138.78.

The evidence introduced at trial was that Abdullah was the dispatcher responsible for the load and that he was responsible for noting and telling the driver that the load was required to be refrigerated, which he did not do. That evidence was unrebutted.

> An independent contractor, undertaking to discharge a contractual duty to his employer, is bound to proceed with skill, diligence and in a workmanlike manner, as is any employee under the common-law rule above quoted. This necessary implication of any contract of employment, if not expressly provided for by the parties, will be supplied in law by construction. [*Nash v Sears, Roebuck & Co*, 383 Mich 136, 143; 174 NW2d 818 (1970) (internal citations omitted), citing 17 Am Jur 2d, Contracts, § 371, pp 814, 815.]

Thus, regardless of whether there was mutuality of assent to the ICA between Abdullah and plaintiff, he was required to proceed in a workmanlike manner and he introduced no evidence at trial rebutting plaintiff's evidence that he failed to notify the driver that the load needed to be refrigerated. Likewise, Abdullah introduced no evidence disputing plaintiff's evidence that his

mistake caused plaintiff damages in the amount of $28,138.78.  As a result, plaintiff is entitled to judgment against Abdullah in that amount.

We affirm in part, reverse in part, and remand for entry of a judgment in favor of plaintiff, and against defendant Abdullah, in the amount of $28,138.78, not inclusive of any judgment interest to which plaintiff may be entitled.  We do not retain jurisdiction.


/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett