*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAPSOKAVATHIS, PLC,

        Plaintiff-Appellee,

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
July 10, 2025
2:09 PM

No.  367422
Macomb Circuit Court
LC No.  20-000182-NF

Before:  MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

In this no-fault action for personal protection insurance (PIP) benefits, defendant, Auto-Owners Insurance Company, appeals as of right the August 2, 2023 final judgment entered after a jury trial, which awarded $132,608.75 to plaintiff, Kapsokavathis, PLC.[1]  Finding no errors warranting reversal, we affirm.

## I.  BACKGROUND

Constance Black[2] was involved in several accidents in her life.  While the motor-vehicle accident at the heart of this case happened on February 5, 2018, when she was 60 years old, defendant maintains that previous accidents actually caused the injuries to Black that plaintiff treated.  These previous accidents include a 2000 motor-vehicle accident, a 2004 slip-and-fall

---

[1] Dr. Michael Kapsokavathis is the owner of plaintiff company.  For ease of reading, we will refer to each Dr. Kapsokavathis and his company as "plaintiff."

[2] At the time of the February 2018 motor-vehicle accident, Black was Constance's last name.  At some point after, Constance and her husband divorced, and Constance went by Constance Peterson.  Because Black was her last name at the time of the incident in question, and because that is the name used throughout the lower-court proceedings, we will continue to use her last name of Black.

accident, a 2006 motor-vehicle accident, a 2010 accident in which she was struck by a motor vehicle while she was riding her bicycle, and a 2017 slip-and-fall accident. Perhaps most notably, Black required surgery on her lower back after the 2010 accident.

For the accident in question, Black was rear-ended in another motor-vehicle accident in February 2018. Although Black's neck was painful after the incident, she attempted to self-treat at home. After a few days, she was still unable to lay on her left side; it would feel like she was being electrocuted. Black treated with Michigan Spine and Back and received injections to combat the severe pain she was enduring. Any positive effects of the injections would last no more than a month. When Black expressed to her doctors that the treatment was not providing very much relief, they informed her that surgery would be the next step. The doctors recommended plaintiff, and Black met with him.

Plaintiff described himself as "ridiculously specialized" and board-certified in orthopedic spinal surgery. He saw issues at the C4-5, C5-6, and C6-7 joints in Black's upper back.[3] Plaintiff diagnosed Black with active cervical radiculitis, which is otherwise known as "active pinched nerve," and he performed surgery on December 11, 2019, at those three joints. The surgery was in essence two surgeries: one was conducted from the front of the neck and a second was from the back. Plaintiff billed defendant for the surgery on January 3, 2020, and defendant denied payment. Black assigned her claims for PIP benefits to plaintiff, and plaintiff filed the instant suit.

Defendant contended that the 2018 motor-vehicle accident did not cause Black's injuries, which made plaintiff's services not compensable under the no-fault act, MCL 500.3101 *et seq*. In support of its position, defendant relied on the opinions of three experts, Dr. Stanley Lee, Dr. Adeel Khalid, and Dr. Marc Wittenberg. In advance of trial, defendant scheduled their *de bene esse* depositions.

Although Dr. Wittenberg opined in his deposition that the February 2018 accident exacerbated some of Black's preexisting conditions, he concluded that by the time of the December 2019 surgery, any exacerbation had subsided, and Black was back to her baseline self. Pertinent to this appeal, Dr. Wittenberg testified that the only medical records he received were from Exam Works, not defendant. He also mentioned that he never received any of plaintiff's operative reports.

Plaintiff later moved to strike Dr. Wittenberg's testimony. Plaintiff argued that because Dr. Wittenberg did not possess any of the medical records on which he relied, did not know how those records were obtained, and primarily relied on his notes, the opinions he offered were not the product of reliable principles or methods, or based on sufficient facts or data and, therefore, not admissible at trial under the rules of evidence. In response, defendant first argued that plaintiff's motion was untimely. Defendant also argued that Dr. Wittenberg's testimony was admissible because it was based on medical records that were to be admitted into evidence at trial.

---

[3] While vertebra in the cervical spine are labeled as C1, C2, C3, C4, etc., the joints between the vertebra are labeled as C1-2, C2-3, C3-4, etc.

Defendant attached some communications its attorneys made to Dr. Wittenberg that listed which records were being sent.

After reviewing defendant's response, which contained communications plaintiff was unaware of, plaintiff filed an emergency motion to strike the testimony of defendant's other experts, Drs. Khalid and Lee, on similar grounds. Plaintiff noted that all three doctors denied having received any records from defendant.

At the motion hearing, which occurred the day trial was scheduled to start, plaintiff's counsel clarified that one of his concerns was that at his deposition, Dr. Wittenberg testified that he noted all the records he relied on in his report. However, the documentation that defense counsel provided to Dr. Wittenberg reflects that more information was sent than acknowledged by Dr. Wittenberg. Thus, plaintiff argued that this ran afoul of MRE 703, which requires that all facts or data in a particular case on which an expert bases an opinion shall be in evidence. The trial court commented that it did not appear that the entirety of the data on which Dr. Wittenberg based his opinion was known.

Plaintiff's counsel then averred that it was logical to presume that the same type of communications between defense counsel and Dr. Wittenberg also were sent to Drs. Khalid and Lee. And, because they also did not acknowledge receiving the same information, the same plaintiff argument for excluding their opinions also applied to them. Notably, defense counsel could not say for certain whether Drs. Khalid and Lee received information that they did not disclose as underlying their respective opinions.

The trial court ruled:

[T]hat cross examination is fundamental, not just in terms of the substance of the issues but also to bias, as to credibility[.] [Under MRE 703,] [i]t is a requirement . . . as to all the records for which the expert bases his opinion is to be within the record and to be, specifically during the trial, to be admitted during trial. And plaintiff is unable to anticipate what that might be and to effectively cross examine the expert unless it is revealed what specifically that expert bases their opinions on, *and that includes correspondence with the defense*, when and if the expert is relying on that correspondence in forming an opinion, and if it's not revealed, plaintiff is unable to cross examine as to the substance as well as the potential credibility and bias and the relationship, whether it in fact, this expert is independent, quote/unquote independent, or a different relationship exists between the defense and this doctor.

It's clear to this Court that the testimony that was rendered doesn't fulfill any of these principles and would be deficient if they were -- if it were to be brought before the jury. [Emphasis added.]

The trial court then proceeded to give defense counsel a choice: either (1) proceed with trial without the experts or (2) adjourn to have the experts available again for cross-examination

at a later date, with defendant responsible for the cost of plaintiff having to convene today.[4] Defendant opted for the second option, and the experts testified live at an adjourned trial.

At the motion hearing, while addressing a different motion to strike brought by defendant,[5] the trial court ruled that evidence of how defendant handled plaintiff's claim is irrelevant for purposes of the jury's determinations. At trial, defense counsel attempted to have the claims representative testify regarding why plaintiff's bills were not paid, but the trial court reiterated that defendant's reasonableness is irrelevant at this stage of the proceedings. But, the trial court stressed that it was not precluding the claims representative from testifying. It only was precluding any irrelevant testimony, such as why the claim was denied; the adjuster could testify on other matters, such as what was received from plaintiff and when the information was received. The trial court also precluded the claims representative from testifying regarding other claims decisions made related to Black. Defendant wanted the claims representative to testify that it had paid $40,000 in benefits on other claims related to Black, but the court found that to be irrelevant for the purposes of the instant trial.

After a four-day trial, the jury returned a verdict in favor of plaintiff and awarded $106,087 in allowable expenses and $26,521.75 in penalty interest for a total of $132,608.75. This appeal followed.

## II. ADMISSIBILITY OF EVIDENCE

Defendant challenges several of the trial court's rulings related to the admissibility of evidence. None of these challenges has any merit. This Court reviews a trial court's decision whether to admit evidence for an abuse of discretion. *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 401; 571 NW2d 530 (1997). A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *Wolfenbarger v Wright*, 336 Mich App 1, 14; 969 NW2d 518 (2021).

## A. TESTIMONY FROM CLAIMS REPRESENTATIVE

---

[4] Defendant filed an interlocutory appeal in this Court on this particular issue. This Court, however, denied the application for leave to appeal "for failure to persuade the Court of the need for immediate appellate review." *Kapsokavathis PLC v Auto-Owners Ins Co*, unpublished order of the Court of Appeals, entered May 17, 2023 (Docket No. 365558).

[5] Plaintiff had filed an amended witness list that included the defense attorneys. Defendant surmised this was because of the claims representative's reference at her deposition to consulting with defense counsel during the claims-adjustment period. Plaintiff's counsel argued that how defendant handled the claim was relevant, but the trial court granted defendant's motion to strike and noted that claims adjustment only is relevant in a potential postjudgment proceeding regarding no-fault attorney fees.

Defendant first argues that the trial court erred when it precluded defendant's claims representative from testifying on certain topics.

The cornerstone of evidentiary law is that relevant evidence is admissible, while irrelevant evidence is not. MRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; see also *Wayne Co v Mich State Tax Comm*, 261 Mich App 174, 196; 682 NW2d 1000 (2004).[6]

Defendant maintains that the trial court abused its discretion when it precluded the claims representative from testifying regarding how she handled plaintiff's claim for recoupment of surgery expenses. While defendant admits that how it handled plaintiff's claim is not relevant to plaintiff's claim for PIP benefits, it asserts that its handling nonetheless is relevant on the issue of whether penalty interest was warranted, which was a consideration for the jury in this case. MCL 500.3142(2), as enacted by 1972 PA 294,[7] which relates to penalty interest, provides:

> (2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer received reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. . . .
>
> * * *
>
> (3) An overdue payment bears simple interest at the rate of 12% per annum.

Defendant on appeal does not provide much detail about why its claims representative's testimony would be relevant, i.e., how the testimony would help the jury determine whether plaintiff offered reasonable proof of the fact and amount of loss. During trial, the trial court asked defendant for an offer of proof as to the claims representative's testimony. In response, defense counsel said that the representative "would be simply testifying why they didn't pay the bill." The trial court stressed that the subjective reasons why a claim was denied is not relevant for whether penalty interest is warranted. The trial court made a correct statement of the law. See *Williams v AAA Mich*, 250 Mich App 249, 265; 646 NW2d 476 (2002) (stating that penalty interest must be assessed if the insurer refused to pay benefits and is later determined to be liable, "irrespective of

---

[6] Several rules of evidence, including MRE 401, were amended effective January 1, 2024. We quote the version of the rules in effect at the time of trial.

[7] This section was later amended in 2019, see 2019 PA 21, but because the prior version of the statute was in effect at the time plaintiff's action accrued, it is this prior version that governs. See *Spine Specialists of Mich PC v MemberSelect Ins Co*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165445); slip op at 8 ("Substantive rights and liabilities are presumptively governed by the law in effect at the time a cause of action accrues."). Regardless, under the circumstances in the present case, there is no substantive difference between the two versions.

the insurer's good faith in not promptly paying the benefits"), citing *Davis v Citizens Ins Co of America*, 195 Mich App 323, 328; 489 NW2d 214 (1992). Whether an insurer acted reasonably only is pertinent when deciding whether the imposition of no-fault attorney fees is justified.[8] See *Davis*, 195 Mich App at 329 ("[A]n insurer's good faith in withholding payment of benefits is relevant in awarding attorney fees under the act, but is irrelevant to liability under the penalty interest statute.").

Against this authority, defendant instead relies on *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 731; 761 NW2d 454 (2008), for the proposition that whether defendant handled the claim reasonably is relevant to the issue of penalty interest. But *Morales* does not contradict the holdings of *Davis* or *Williams*; in fact, it expressly reiterates those holdings. See *id*. at 730. In *Morales*, this Court ruled that the trial court did not abuse its discretion by allowing a claims representative to testify "regarding the manner in which it processed [the] plaintiff's claim for no-fault benefits." *Id*. at 729. *Morales* noted that "[t]he focus on the evidence . . . was on what plaintiff provided defendant and whether it constituted 'reasonable proof of the fact and of the amount of loss sustained.' " *Id*. at 731. *Morales* cannot be read as a blanket holding that the way a claims representative handles a claim is always relevant for matters of penalty interest. The *Morales* holding instead seems consistent with the trial court's ultimate ruling in the instant matter: that a claims representative can testify about what was received by plaintiff and when the proof was received, but the representative's subjective thoughts on whether what was received was "reasonable" is not relevant because reasonableness is a matter for the trier of fact to decide. Notably, in defendant's offer of proof to the trial court, counsel only suggested that the representative would testify as to why the claim was denied. As explained, this type of testimony would run afoul of rules related to relevancy, as described in *Williams* and *Davis*, and the trial court did not abuse its discretion by not allowing the representative to testify on that specific topic. Notably, the trial court stated that the claims representative would be free to testify on other matters, such as what was received from plaintiff and when it was received.

In sum, defendant greatly overstates *Morales*. *Morales* did not hold that a claims representative's testimony regarding her subjective reasons for denying a claim is always admissible for determining penalty interest under the no-fault act. Rather, *Morales* holds that testimony about what materials were received by the insurer may be relevant for the question of whether the insured provided "reasonable proof of the fact and of the amount of loss sustained." See *id*. at 430. Because the trial court's ruling in the instant case was consistent with *Morales*, relief is not warranted for this issue.

## B. LETTER FROM BLACK'S ATTORNEY

---

[8] Under MCL 500.3148(1), attorney fees are warranted "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." See also *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008) ("The no-fault act provides for attorney fees when an insurance carrier unreasonably withholds benefits.").

Defendant next argues that a letter written by Black's counsel before the February 2018 accident occurred was admissible at trial as a party-opponent admission.

On the first day of trial, defense counsel brought to the trial court's attention a dispute the parties had on the admissibility of a proposed exhibit. Defendant sought to have a November 27, 2017 letter authored by Black's attorney admitted into evidence. The letter was in regard to another claim that Black had with Liberty Mutual that was not related to the motor-vehicle accident in this case. It was submitted as a demand letter for payment. Defense counsel sought its admission to show that the neck and back pain Black complained of after the February 2018 accident was in fact caused by this earlier accident.[9]

The trial court stated that it seemed defense counsel was arguing that the statement was admissible as a party-opponent admission under MRE 801(d)(2). Defense counsel said that there were multiple avenues for the statement's admission, including MRE 801(d)(2). However, defense counsel never identified any other rules of evidence and instead simply averred that it is not hearsay because "Black will be here, and she can be cross-examined with it." The trial court agreed to that limited extent, stating, "Well, if she's here, then I suppose she can be impeached [with it]." Plaintiff's counsel maintained that the statement could not be used even for impeachment because Black was not the author of the statement. The trial court disagreed, noting that the attorney's statement is attributable to the client, Black. Consequently, although the trial court ruled that the statement was not admissible as a party-opponent admission, it was attributable to Black and could be used to impeach her under MRE 613. The trial court further noted that the medical records related to that November 2017 demand also were in evidence.

On appeal, defendant dedicates most of its argument to asserting that the letter was relevant. There is no question that the letter is "relevant"—but even relevant hearsay is not admissible. See MRE 802. Defendant maintains that the trial court erred because the letter was admissible under MRE 801(d)(2), which provides that a statement is not hearsay if

> [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . , or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .

Initially, it should be noted that the letter or statement nominally would qualify under MRE 801(d)(2)(D) because the statement was made by Black's agent, her attorney, in a matter within the scope of her agency and made during the existence of that relationship. However, the threshold requirement for this hearsay exemption is not present. The statement must be offered against a "party." There is no dispute that Black is not a party to this lawsuit.

As in the trial court, defendant provides no authority holding or establishing that an assignor is a party to a lawsuit when the assignee is the actual party bringing the lawsuit. Instead,

---

[9] In the letter, Black's attorney purportedly attributed some neck and back pain to this earlier accident.

defendant relies on the well-established general principle that a medical-provider assignee, such as plaintiff, "stands in the shoes" of the claimant assignor when seeking PIP benefits from the claimant's insurer. See *Prof Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 177; 577 NW2d 909 (1998). But defendant reads this principle much too broadly. The principle simply means that an assignee possesses whatever rights the assignor would have to collect PIP benefits from an insurer. *Id*. The fact that plaintiff possessed the same rights as Black to recover the PIP benefits does not make Black a "party." See *Farrar v Suburban Mobility Auth for Regional Transp*, 345 Mich App 472, 481-482; 7 NW3d 80 (2023) ("When an assignment occurs, the assignee of a cause of action becomes the real party in interest with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor.") (cleaned up). While plaintiff, as the assignee, is subject to the same rights and defenses that Black had, see *id*. at 482, that is not the same as making Black a party to the instant suit.

Therefore, because Black is not a party to this lawsuit, the trial court did not abuse its discretion by declining to admit into evidence the November 2017 letter—although attributable to her—as a party-opponent admission.[10]

## C. SOCIAL SECURITY DOCUMENTS

Defendant also argues that the trial court erred when it ruled that documents related to Black's Social Security Disability Insurance were inadmissible and irrelevant.

To preserve an evidentiary issue for appeal, a party must raise the issue in the trial court. *Genna v Jackson*, 286 Mich App 413, 423; 781 NW2d 124 (2009). Further, the grounds for the appellant's position must be the same grounds asserted in the trial court. *Id*. See also MRE 103(a). We conclude that this issue is not properly preserved.

On the first day of trial before jury selection commenced, plaintiff objected to defendant's planned introduction of social security documents that purported to show that Black in 2009 had successfully applied for disability payments from the Social Security Administration. After realizing that plaintiff had not stipulated to the authenticity of the documents, defense counsel volunteered that he would simply "use it for cross-examining Ms. Black. It is written in her own hand. So, I -- I think we can get around that issue of [authentication] just handling it that way." The trial court then added:

---

[10] Federal courts have reached a similar conclusion regarding FRE 801(d)(2), the analog to MRE 801(d)(2). See, e.g., *Wharf, Inc v Dist of Columbia Wharf Horizontal Reit Leaseholder LLC*, 2021 WL 1198143 (DDC, 2021) (explaining that "while an assignee takes the rights of the assignor, no more and no less, this is a principle of substantive law, not one of evidence and such privity of interest does not render his statements admissions") (quotation marks and citation omitted); *Calhoun v Baylor*, 646 F2d 1158, 1162 (CA 6, 1981) ("Rule 801(d)(2) does not include statements by predecessors in interest among the types of statements the rule makes admissible.").

All right. Well, . . . if it's a matter of impeachment, it wouldn't be substantive evidence, so -- under [MRE] 613, so it would -- it would not be an exhibit any further.

Notably, after recognizing that the documents were not included in the stipulation involving authentication, it was defense counsel who volunteered to "use" the document during Black's cross-examination and never sought to admit the documents into evidence. Further, the trial court's final statements that "if" the documents were to be used as impeachment, then they would not be an exhibit in any event, is a conditional statement. Nowhere did the trial court make a definitive ruling that the documents were not admissible or not relevant. Therefore, because defendant did not raise in the trial court the argument he presents on appeal, that the trial court ruled the social security related documents inadmissible, we deem the issue unpreserved. And unpreserved issues in civil cases are waived. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294; 14 NW3d 472 (2023).

Moreover, assuming the issue was preserved, the trial court did not err when it conditionally ruled that evidence of impeachment is not admissible as substantive evidence. This principle is consistent with established caselaw. See *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002) (stating that evidence of a witness's prior unsworn statement, even if admissible for impeachment purposes, generally is inadmissible as substantive evidence). Additionally, assuming any error existed, defendant is not entitled to any relief because it is not more probable than not that the error was outcome-determinative. See MCR 2.613(A) (providing that reversal is not required unless refusal to act appears to be "inconsistent with substantial justice"). The documents presumably show that Black claimed that she was disabled as of 2009.[11] But because Black testified about this same information, defendant cannot show that the failure to introduce the cumulative social security documents themselves into evidence had any appreciable effect, let alone had a probable chance of affecting the jury's verdict.

## III. JURY INSTRUCTIONS

---

[11] We note that the Social Security documents are not contained in the lower court record and have not been provided to this Court. It is entirely unclear what these documents specifically say. Without that information, it is difficult for this Court to determine their admissibility. From context, we presume that the records were from about 2009. During Black's cross-examination, defense counsel got Black to confirm that she had been receiving Social Security disability benefits since 2009. Defense counsel also got Black to admit that when she applied for benefits, she stated that she needed help around the house and that in the decade of receiving disability payments before the February 2018 accident, she never informed the Social Security Administration that she had gotten better. Counsel also got Black to admit that at the time of the accident, she was still at the same level of disability. Because Black admitted that she had applied for disability benefits and had been receiving those benefits since 2009, it would seem that the documents themselves would be consistent with her testimony, making them not suitable for MRE 613, which is likely why defense counsel never presented the documents to Black at trial.

Defendant next challenges on appeal two of the trial court's rulings pertaining to jury instructions.

Claims of instructional error generally are reviewed de novo. *Jimkoski v Shupe*, 282 Mich App 1, 9; 763 NW2d 1 (2008). However, a trial court's decision regarding supplemental instructions is reviewed for an abuse of discretion. *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008). "Instructional error warrants reversal if the error resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice." *Cox ex rel Cox v Bd of Hosp Managers for City of Flint*, 467 Mich 1, 8; 651 NW2d 356 (2002) (quotation marks and citations omitted).

## A. DEFENDANT'S REQUESTED JURY INSTRUCTION

Defendant argues that the trial court erred by not providing a jury instruction it requested related to the claims representative not testifying at trial.

"Jury instructions should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them." *Id*. (quotation marks and citation omitted). After the trial court denied the claims representative from testifying on her subjective intent regarding why she denied plaintiff's claim, defendant requested the following instruction:

> You are likely wondering why defense claims representative is not testifying regarding why she did not pay Plaintiff's medical bill at issue in this lawsuit. This Court has decided that this is not relevant to the decision you are ultimately being asked to decide in this case. The Court is instructing you that the decision for the defense claim representative not to testify at trial should not be held against Defendant or its counsel or be construed in any negative way against Defendant or its counsel.

The trial court denied the use of the instruction, stating,

> this assumes quite a bit. The fact is, I don't know why the members of the jury would form this -- this point of curiosity or not. It -- it -- this issue isn't before them, claim handling isn't before them, it hasn't been elicited during testimony. They're gonna be instructed with what to determine, that is was there an injury, was there an exacerbation, was it related to the -- to the collision, was the treatment reasonable and necessary, was the -- the billing for the treatment reasonable and necessary, and if so, what would that be? That's it.
>
> The Court does not find this to be instructive in any way, and the Court's gonna deny the request.

The trial court did not err. The instruction did assume "quite a bit." There is nothing except defense's counsel's speculation that the jury was curious regarding why the claims representative denied the claim. Indeed, as explained in Part II-A of this opinion, the jury was tasked with determining, for penalty interest, whether plaintiff supplied "reasonable proof of the fact and of

the amount of loss sustained." The claims representative's subjective thoughts on the reasonableness of that proof are irrelevant. See *Williams*, 250 Mich App at 265; *Davis*, 195 Mich App at 328. More problematic for the instruction, the portion providing that "the decision for the defense claim representative not to testify at trial should not be held against Defendant," strongly implies that it was the trial court's decision to not have the representative testify at trial. This would be inaccurate because the trial court merely disallowed the representative from testifying regarding her subjective reasons for denying plaintiff's claim. The trial court expressly permitted her to testify on any other relevant matters. Finally, the instruction required the jury to not hold the fact that the representative did not testify "against Defendant or its counsel or be construed in any negative way against Defendant or its counsel." Defendant in the trial court and on appeal does not cite any authority to support this portion of the instruction. This portion seems to be related to defendant's speculative assertion that the jury was "expecting" the claims representative to testify. But a party's speculation about what a jury is curious about does not qualify as a "material issue[], defense[], or theor[y]" necessitating an instruction. See *Cox*, 467 Mich at 8.

In sum, the trial court did not err by declining to provide defendant's requested jury instruction. Moreover, assuming there was any error, defendant has failed to show how any "error resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice." See *id*.

## B. PLAINTIFF'S REQUESTED INSTRUCTION

Defendant also argues that the trial court erred when it provided a jury instruction plaintiff requested. Plaintiff initially requested a jury instruction that more clearly described that aggravated injuries qualify for recovery under the no-fault act. After striking a particular portion of it, the trial court provided the remainder as follows:

> An injury arises out of the use of a motor vehicle as a motor vehicle when the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or but for.

> Accidental bodily injury can be satisfied where the Plaintiff can demonstrate the accident aggravated a preexisting condition. However, it is important to note the Plaintiff must still prove by a preponderance of the evidence the accident did, in fact, aggravate the preexisting condition. The mere existence of a preexisting condition does not automatically entitle the Plaintiff to recovery. Please consider this instruction in conjunction with all the other instructions provided to you by the Court.

When the standard instructions do not adequately cover a particular area, the trial court is obligated to provide additional instructions when requested, as long as the supplemental instructions properly inform the jury of the applicable law and are supported by the evidence. *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401-402; 628 NW2d 86 (2001). The purpose of this instruction was to explicitly inform the jury that the exacerbation of a preexisting injury or condition qualifies as an "accidental bodily injury" under the no-fault act. Defendant does not dispute that under Michigan law, the aggravation or exacerbation of a

-11-

preexisting injury is compensable under the no-fault act.[12]  See *Wilkinson v Lee*, 463 Mich 388, 395; 617 NW2d 305 (2000) (stating that recovery is allowed if the trauma caused by the accident triggered symptoms from a preexisting condition); *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009) ("[T]he aggravation or triggering of a preexisting condition can constitute a compensable injury."); *Mollitor v Associated Truck Lines*, 140 Mich App 431, 438; 364 NW2d 344 (1985) ("[A]n injured party may recover if he can demonstrate that the accident aggravated a pre-existing condition."); *Hensely-Panicaccia v State Farm Mut Auto Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2016 (Docket No. 325969); p 5 (acknowledging that given the condition of the law regarding the aggravation of preexisting conditions, "we see no reason why, generally speaking, a fair instruction on the consideration of a pre-existing condition would not potentially be appropriate as a supplemental instruction, depending on the circumstances involved").[13]

On appeal, as it did in the trial court, defendant simply maintains, without quoting or identifying any portions of M Civ JI 35.02, that it was inappropriate to provide the special instruction because that standard instruction adequately covers this area.  M Civ JI 35.02 is titled "No-Fault First-Party Benefits Action: Burden of Proof," and provides as follows:

> The plaintiff has the burden of proving:
>
> (a) (that at the time of the accident there existed a valid contract of no-fault insurance between <name of insured> and defendant)
>
> (b) (that plaintiff's injuries arose out of the [ownership / or / operation / or / maintenance / or / use] of a motor vehicle as a motor vehicle)
>
> (c) (that plaintiff incurred allowable expenses which consist of reasonable charges for reasonably necessary products, services and accommodations for the plaintiff's care, recovery or rehabilitation)
>
> * * *
>
> (j) that the defendant failed to pay any or all of said benefits.

---

[12] In the trial court, defense counsel also conceded that this was the state of the law.

[13] Plaintiff and the trial court relied, in part, on the *Hensely-Panicaccia* opinion, which relied on *Mollitor*.  Defendant on appeal argues that both of these opinions should not be given any weight because *Hensely-Panicaccia* is unpublished and *Mollitor* was issued before 1990.  Defendant is correct that unpublished opinions are not binding and can only be used for their persuasive value.  See *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).  However, although published opinions of this Court issued before November 1, 1990, are not strictly binding, they are precedential under the rule of stare decisis and generally should be followed.  *Stoudemire v Thomas*, 344 Mich App 34, 41 n 2; 999 NW2d 43 (2022).  In any event, defendant ignores the unequivocal binding caselaw that espouse the same rule of law, such as *Wilkinson* and *Fisher*.

> To the extent that plaintiff has met or has not met [his / her] burden of proof, you may grant, diminish or deny the claimed benefits according to the methods of computation which I will describe next.

From a review of the above instruction, the only aspect that is implicated in the current issue is element (b). Plaintiff argued in the trial court that this standard instruction inadequately explains to the jury that the aggravation of a preexisting injury qualifies as a compensable injury, and plaintiff is correct. The standard instruction merely allows for recovery of benefits if the injuries "arose out of" the ownership or operation of a motor vehicle as a motor vehicle. A jury could be confused as to whether the aggravation of a preexisting injury qualifies as "arising out of" an accident. The proposed instruction clearly conveyed that such aggravation or exacerbation qualifies under the law. Because the requested instruction, as given, properly instructed the jury regarding the applicable law and because the standard instruction does not fully address the situation of an aggravation of a preexisting injury, the trial court did not abuse its discretion by providing the special instruction.

## IV. DISCOVERY SANCTION

Finally, defendant argues that the trial court erred when it struck the deposition testimony of its three experts. Defendant asserts that the medical records the experts relied on were stipulated as to their authenticity and that they eventually were admitted into evidence at trial. However, defendant mischaracterizes the basis for the trial court's ruling. The trial court did not strike the testimonies because they were unreliable or because the experts relied on information that was not admitted, or going to be admitted, into evidence. Instead, the trial court struck the experts' testimony because it found merit in plaintiff's argument that defendant failed to disclose certain communications it had with the experts. Because defendant fails to address the basis of the trial court's decision, we deem the issue abandoned. See *Joerger v Gordon Food Serv, Inc*, 224 Mich App 167, 175; 568 NW2d 365 (1997) (stating that this Court need not consider granting an appellant any relief when the appellant fails to address the basis of the trial court's decision).

Moreover, defendant fails to explain, assuming any error occurred, how the requested relief of a new trial is warranted.[14] The trial court struck the experts' deposition testimony and allowed defendant to either (1) proceed to trial without the experts, or (2) retake the testimony. Defendant opted for the second option, and the experts testified in person at trial. Importantly, the trial court did not limit how the experts could testify in this subsequent proceeding. Thus, the requested remedy of a new trial would accomplish nothing that did not occur already. The experts would simply testify again, either via *de bene esse* depositions or live at trial. Accordingly, the issue is moot, and we decline to further address it. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) (defining an issue as moot when an event occurs renders it impossible for a reviewing court to grant meaningful relief).

---

[14] In its argument section for this issue, defendant asserts only that the trial court abused its discretion without requesting any particular relief. But, in its conclusion section, the only relief defendant requests is a new trial.

## V. CONCLUSION

There were no errors warranting relief.  Therefore, we affirm.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan